## FRELLSEN AND COMPANY v. CRANDELL, REGISTER OF THE STATE LAND OFFICE OF LOUISIANA.

ERROR TO THE SUPREME COURT OF THE STATE OF LOUISIANA.

No. 129.   Argued March 7, 8, 1910.—Decided April 4, 1910.

Whether a patent is wrongfully issued or can be set aside is a matter to be settled between the State and the patentee, but no individual is authorized to act for the State.

Even if the State could set aside a patent for having been issued on illegal or inadequate consideration the matter is between it and the patentee; and, until set aside, one tendering the statutory price does not thereby become entitled to receive such land from the State, nor does the tender create a contract with the State within the protection of the contract clause of the Federal Constitution.

Where the state court so holds, public land of a State, as is the case of public land of the United States, held under patent or certificate of location, is not, until such patent or certificate be set aside at the instance of the State, subject to other entry or purchase.

In the matter of sale and conveyance each State may administer its public lands as it sees fit so long as it does not conflict with rights guaranteed by the Federal Constitution; nor is any State obliged to follow the legislation or decisions of the Federal Government or of any other State.

120 Louisiana, 712, affirmed.

CONGRESS, by an act entitled "An act to Aid the State of Louisiana in Draining the Swamp Lands therein," approved March 2, 1849 (9 Stat. 352, c. 87), granted to that State "the whole of those swamp and overflowed lands" in her borders, "which may be or are found unfit for cultivation." See also act of September 28, 1850, 9 Stat. 519.   In 1880 the general assembly of the State of Louisiana, by an act known as "Act 23 of 1880," approved March 8, 1880 (Laws La., 1880, c. 84, p. 25), authorized the governor of the State to institute proceedings to recover all of those lands not already conveyed to the State, or, if improperly failed to be conveyed, their value in money or government scrip, "provided, that the State shall

incur no cost or expense in the prosecution of the said claims other than an allowance to be made by the governor out of the lands, money or scrip that may be recovered." On March 20, 1880, the governor made a contract with John McEnery to recover from the United States the unconveyed balance of the lands, or their value in money or scrip, and agreed to pay him "fifty per centum of the lands, money or scrip recovered, to be paid as provided in said Act 23." It also provided: "Where lands in kind are recovered, the compensation as aforesaid, of the said McEnery, shall be represented in scrip or certificates, to be issued by the register of the land office of the State, and locatable upon any lands owned by the State." A large amount of lands were recovered, and the register of the state land office issued to John McEnery certificates in terms made locatable upon any vacant land granted to the State by the act of Congress heretofore referred to. These certificates were sold and assigned by McEnery, and his assignees located them upon public lands, some of which had not been recovered by McEnery under his contract. To some of the assignees patents were thereafter issued, while others held simply certificates of location. By Act 106 of 1888 (Laws La., 1888, p. 171) Act 23 of 1880 was repealed, and by § 2 of the repealing act it was provided "that the act or agreement made between Louis A. Wiltz, governor of the State, and John McEnery, made March 20, 1880, purporting to be under the authority of said Act No. 23, is hereby abrogated and terminated." This repealing act took effect January 1, 1889. By Act No. 125, approved July 8, 1902 (Laws La., 1902, p. 209), it was provided that the swamp and overflowed lands donated by Congress to the State should be subject to entry and sale at the rate of $1.50 per acre. On July 7, 1906, the legislature passed Act No. 85 of 1906 (Laws La., 1906, p. 141), declaring "that present holders and owners of patents for public lands, issued by the State of Louisiana, their heirs, assignees or transferees, shall be confirmed as applicants for said lands, from the date of the issuance of said patents, where the said patents

were not paid for in money, but were paid for by certificates or warrants for scrip, which were not legally receivable in payment for such patents, and authorizing such present holders and owners, their heirs, assignees or transferees, of said patents to validate and perfect their title to the lands covered by said patents, or to any part or subdivision of such lands, within one year from date of passage of this act, by paying therefor, in cash, the price of one dollar and fifty cents per acre." The act further provided that upon payment of such amount "the said patents shall be valid and legal 'for all purposes, as if payment therefor had been made in cash at the date of their issuance."

Petitioners, claiming that the location of these certificates upon lands not recovered by McEnery and the issuance of patents therefor were illegal, tendered on March 28, 1905, to the proper officers $1.50 per acre for a large body of lands which were covered by these certificates and patents. They demanded that warrants should be issued to them for the lands, which was refused. On July 11, 1906, they filed their petition in the Twenty-second Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, averring that they were the first and only applicants for said lands under the provisions of said Act No. 125 of 1902, or of any other law of the State since the date of the issuance of said illegal certificates and patents, and that by making the legal tender they became vested with the right to acquire said lands.

The District Court sustained the exception of no cause of action and entered judgment dismissing the suit. This judgment was affirmed by the Supreme Court of the State, 120 Louisiana, 712, and from that court was brought here on writ of error.

*Mr. P. M. Milner*, with whom *Mr. H. G. Morgan* was on the brief, for plaintiffs in error:

While a voidable patent might segregate land from the public domain, a patent null and void cannot have that effect.

In *Emblen* v. *Lincoln Land Co.*, 184 U. S. 660, *Re Emblen*, 161 U. S. 52, and *Small* v. *Crandell*, 118 Louisiana, 1052, the patents were not actually null and void. *United States* v. *Throckmorton*, 98 U. S. 70, can also be distinguished. If, however, the patent is actually null and void the land is not segregated but remains open to entry. *St. Louis Smelting Co.* v. *Kemp*, 104 U. S. 645; *Doolan* v. *Carr*, 125 U. S. 625.

The patents issued for McEnery scrip being void, plaintiffs in error acquired a vested interest in the land covered by such patents when they made formal application and tender in compliance with the law of the State. *Pennoyer* v. *McConnaughy*, 140 U. S. 1.

The McEnery certificates were issued in pursuance of a contract of compensation and related solely to the lands recovered through McEnery. Making them locatable on any public lands including those not recovered through him was illegal and the locations made thereunder on land not so recovered were actually void and did not operate to segregate.

Defendants in error rely on *Western R. R. Co.* v. *United States*, 108 U. S. 510; *McLaughlin* v. *United States*, 107 U. S. 526; *United States* v. *San Jacinto Co.*, 125 U. S. 273; but in none of these cases was the patent void. And see *United States* v. *Stone*, 2 Wall. 535, in which the effect of a void patent is referred to. See also *Mowry* v. *Whitney*, 14 Wall. 439; *McMichael* v. *Murphy*, 197 U. S. 304. *Goodloe* v. *Register*, 47 La. Ann. 568, can also be distinguished. In *McEnery* v. *Nichols*, 42 La. Ann. 209, no scrip was before the court and its invalidity was not noticed, and the only lands involved in that case were those recovered by McEnery.

*Mr. J. Blanc Monroe, Mr. R. G. Pleasant* and *Mr. A. P. Pujo*, with whom *Mr. Walter Guion*, Attorney General for the State of Louisiana, *Mr. Bernard Titche, Mr. Leland H. Moss, Mr. Wynne G. Rogers, Mr. C. D. Moss, Mr. C. A. McCoy, Mr. R. L. Knox, Mr. E. D. Miller, Mr. Harry H. Hall* and *Mr. Monte M. Lemann* were on the brief, for defendants in error.

M<span>R</span>. C<span>HIEF</span> J<span>USTICE</span> F<span>ULLER</span> delivered the opinion of the court, after reading the following memorandum:

This opinion, including the preliminary statement, was prepared by our Brother Brewer, and had been approved before his lamented death. It was recirculated and again agreed to, and is adopted as the opinion of the court.

Petitioners contend that by their tender they made a contract with the State for a conveyance of the lands in controversy; that this contract was broken, and that they were deprived of their rights thereunder by the legislation of the State and the action of its officers in pursuance thereof; that thus a Federal question arises under Art. I, § 10, of the Constitution of the United States, which forbids a State to pass a "law impairing the obligation of contracts." Their argument is briefly this: The lands were not obtained by McEnery under his contract with the State; the statute authorizing that contract provided that his payment should be solely out of the lands obtained by him from the United States. Notwithstanding this limitation, certificates were issued to him authorizing location upon any lands included within the grant of Congress by the act of 1849, and they were in fact located upon the lands in controversy—lands which were not obtained by McEnery; that this location, even when followed by patent, did not segregate these lands from the public domain of the State, and they remained therefore open to purchase by any one complying with the statutes; that petitioners were the first and only parties who tendered to the State the prescribed price; that thereby they acquired a vested right to a conveyance by the State of the legal title.

But it is not contended that the patents were not signed by the proper officers and in due form to convey the title of the State to the patentees. It is not suggested that McEnery received any greater amount of lands than he was entitled to receive under his contract, and it does not appear from the

record that the patents, on their face, disclosed any invalidity in the title conveyed. While an examination of the records would, if the facts stated in the petition are true, show that they were improperly issued yet this could be ascertained only by looking beyond the face of the patent. Now, whether the patents were wrongfully issued or could be set aside was a matter to be settled between the State and the patentee. The State undoubtedly received something, for the acceptance of every McEnery certificate released the State *pro tanto* from its obligation under the contract to McEnery. Whether it should remain satisfied with that payment or not was for the State to determine. If it were not satisfied it could take proper proceedings to set aside the patent, but no individual was authorized to act for the State.

The rule in respect to the administration of the public domain of the United States is well settled. In *Doolan* v. *Carr*, 125 U. S. 618, 624, Mr. Justice Miller said:

"There is no question as to the principle that where the officers of the Government have issued a patent in due form of law, which on its face is sufficient to convey the title to the land described in it, such patent is to be treated as valid in actions at law, as distinguished from suits in equity, subject, however, at all times to the inquiry whether such officers had the lawful authority to make a conveyance of the title. But if those officers acted without authority; if the land which they purported to convey had never been within their control, or had been withdrawn from that control at the time they undertook to exercise such authority, then their act was void—void for want of power in them to act on the subject-matter of the patent, not merely voidable; in which latter case, if the circumstances justified such a decree, a direct proceeding, with proper averments and evidence, would be required to establish that it was voidable, and should therefore be avoided."

In *Hastings &c. Railroad Company* v. *Whitney*, 132 U. S. 357, 363, Mr. Justice Lamar, who had been Secretary of the

Interior, discussed the question of a homestead entry, and, after referring to *Kansas Pacific Railway Co.* v. *Dunmeyer*, 113 U. S. 629, added:

"Counsel for plaintiff in error contends that the case just cited has no application to the one we are now considering, the difference being that in that case the entry existing at the time of the location of the road was an entry valid in all respects, while the entry in this case was invalid on its face, and in its inception; and that this entry having been made by an agent of the applicant, and based upon an affidavit, which failed to show the settlement and improvement required by law, was, on its face, not such a proceeding in the proper land office, as could attach even an inchoate right to the land.

"We do not think this contention can be maintained. Under the homestead law three things are needed to be done in order to constitute an entry on public lands. . . . If either one of these integral parts of an entry is defective, that is, if the affidavit be insufficient in its showing, or if the application itself is informal, or if the payment is not made in actual cash, the register and receiver are justified in rejecting the application. But if, notwithstanding these defects, the application is allowed by the land officers, and a certificate of entry is delivered to the applicant, and the entry is made of record, such entry may be afterwards canceled on account of these defects by the Commissioner, or on appeal by the Secretary of the Interior; or, as is often the practice, the entry may be suspended, a hearing ordered, and the party notified to show by supplemental proof a full compliance with the requirements of the department; and on failure to do so the entry may then be canceled. But these defects, whether they be of form or substance, by no means render the entry absolutely a nullity. So long as it remains a subsisting entry of record, whose legality has been passed upon by the land authorities, and their action remains unreversed, it is such an appropriation of the tract as segregates it from the public domain, and therefore precludes it from subsequent grants."

In *In re Emblen*, 161 U. S. 52, 56, Mr. Justice Gray thus stated the law:

"After the patent has once been issued, the original contest is no longer within the jurisdiction of the land department. The patent conveys the legal title to the patentee; and cannot be revoked or set aside, except upon judicial proceedings instituted in behalf of the United States. The only remedy of Emblen is by bill in equity to charge Weed with a trust in his favor. All this is clearly settled by previous decisions of this court, including some of those on which the petitioner most relies. *Johnson* v. *Towsley*, 13 Wall. 72; *Moore* v. *Robbins*, 96 U. S. 530; *Marquez* v. *Frisbie*, 101 U. S. 473; *Smelting Company* v. *Kemp*, 104 U. S. 636; *Steel* v. *Smelting Company*, 106 U. S. 447; *Monroe Cattle Company* v. *Becker*, 147 U. S. 47; *Turner* v. *Sawyer*, 150 U. S. 578, 586."

See also *McMichael* v. *Murphy*, 197 U. S. 304, 311.

Obviously, in this case the Supreme Court of Louisiana followed the practice obtaining in respect to the public lands of the United States. But if it had not and had declared simply the law of the State of Louisiana its decision would, doubtless, be controlling on this court, for, in the matter of the sale and conveyance of lands belonging to the public no one State is obliged to follow the legislation or decisions of another State, or even those of the United States, but may administer its public lands in any way that it sees fit, so long as it does not conflict with rights guaranteed by the Constitution of the United States.

Counsel criticize the opinion of the Supreme Court of Louisiana, in that it speaks of all the lands as having gone to patent while it is said in the petition that some of the assignees "stood upon the certificates." Whether the language of the petition technically justifies the construction placed upon it by the Supreme Court of the State, is immaterial. Certainly, there is no naming of any single tract as covered by certificate alone and not patented, and if any tract was held under a certificate of location it was, within the scope of the rul-

ing of the Supreme Court, not subject to other entry or purchase.

We see no error in the ruling of the Supreme Court, and its judgment is

*Affirmed.*