## LUTCHER & MOORE LUMBER CO. v. WHITMAN.
No. 421.

District Court, W. D. Louisiana, Lake Charles Division.

Feb. 4, 1943.

Pujo, Hardin & Porter, of Lake Charles, La., for plaintiff.

Plauche & Plauche, of Lake Charles, La., for defendant.

DAWKINS, District Judge.

This is a petitory action or suit to try title to some 80 acres of land, being part of those passing to the state from the Government, under the Swamp Land Act of 1849, 9 Stat. 352. On June 29, 1883, James A. Nealy, using certificate No. 502, of what was known as John McEnery scrip, entered the S.E.¼ of N.E.¼ and N. W.¼ of S.E.¼ of Sec. 26 T 6 S.R. 13 W. and received certificate dated the same day, but it was not recorded in Beauregard Parish, where the land is situated, until September 6, 1906. The scrip was issued to McEnery under provisions of Act 23 of the State Legislature of 1880, to compensate him for services rendered in recovering lands, the titles to which were not clear, or were in controversy at that time. Nealy conveyed the land in this case to Henry J. Lutcher and G. Bedell Moore, on November 4, 1889, by deed recorded in Beauregard Parish, November 6th of the same year and it passed by mesne conveyances to the plaintiff corporation. Claim-

ing ownership plaintiff alleges that the defendant is in possession, as was necessary in a petitory action, and prays that its title be sustained with a consequent recovery of possession.

Defendant disputes the plaintiff's claims and alleges title in himself under a patent from the state, dated June 2, 1906, recorded in Beauregard Parish, July 25th of the same year.

Subsequent to the filing of defendant's answer on May 1, 1941, plaintiff on December 16th of that year, filed pleas of prescription of 10 and 30 years, alleging that it and its vendors had been "in actual, physical, uninterrupted, public, adverse possession, in good faith * * * under good and valid deeds, fair on their faces, since November 4th, 1889."

It then set forth at length the nature and extent of the acts of possession exercised by it. Lutcher and Moore acquired this land along with other large bodies, mainly for timber that was from time to time manufactured therefrom, and the corporation to which they conveyed it began its operations on the land in 1906. It also manufactured turpentine from stumps thereon in 1920, and again cut the timber in 1928. In the latter year it also built tram roads thereon and executed rights of way deeds for pipe lines over and across the same. Mineral leases were likewise executed and plaintiff paid the taxes for some 40 years.

Defendant's title began with a homestead entry on May 28, 1897, and he moved on the land about the same time. He built a house and barn and began cultivating small patches and grazed cattle thereon. The patent, which he received in 1906, was in completion of this homestead entry. However, Whitman moved off the property in 1902 "to. make a living". He had begun cutting timber thereon in 1900 and while so engaged, a representative of plaintiff appeared and informed him that the land belonged to that company. After further investigation defendant concluded that Lutcher and Moore were "the law and gospel at that time and that what they did and said was the whole truth." He testified that he verified the fact that plaintiff had purchased from Nealy but "later on I decided there was no need of being beaten out of anything."

Of course, being the plaintiff in a petitory action the burden is on plaintiff to establish title in itself. The history of

McEnery scrip is fully detailed in Frellsen & Co. v. Crandell, 120 La. 712, 45 So. 558. The plaintiff there had made application to enter large tracts on the theory that this scrip was void and in a suit attacked as unconstitutional Act 85 of 1906, which permitted the holder of a patent issued for scrip or warrants "which were not legally receivable in payment" to pay an additional $1.50 an acre within one year after the passage of the law, in perfection of his claim. The state supreme court, in disposing of the matter, emphasized the fact that patents had been issued as to all tracts sought to be acquired by Frellsen, and held that they "were conclusive against the state and all persons claiming under junior titles, until set aside or annulled".

About 1939 Whitman, "after thinking a lot about" this land, moved back on it and constructed a small house near the spot on which he had built the first one in 1897. For the last three years he has paid the taxes on the land, although he had paid none prior thereto, because as he states, when he would go to pay them he found that the plaintiff had already paid the taxes. The first house which he built in 1897 was burned some two or three years after he moved off in 1902. The barn, crib and fences around some three or four acres of patches, which he had cultivated, were also burned some years later. He did nothing towards returning to the property until 1939.

In the Frellsen v. Crandell case, supra, it was held: "Held, that the patents issued to John McEnery's assignees were conclusive against the state and all persons claiming under junior titles, until set aside or annulled in a proper action by some judicial tribunal, and that such patents vested the legal title in the patentees, segregated the land from the public domain, and deprived the land department of further jurisdiction in the premises, and that consequently the application and tender of plaintiffs, made in 1905, vested in them no contract rights whatever in the lands previously patented."

Thus, it can be seen that the Frellsen case does not support the contention of counsel for plaintiff as authority for the one now before this court, unless the same principles must be applied by analogy to certificates of entry. That case went to the United States Supreme Court (217 U. S. 71, 30 S.Ct. 490, 493, 54 L.Ed. 670) and in answering the plaintiff's (Frellsen) con-

tention that it included tracts upon which certificates of entry alone had been issued, that court, after stating that only state law was involved, the interpretation of which by the state court was conclusive, said:

"Counsel criticize the opinion of the supreme court of Louisiana, in that it speaks of all the lands as having gone to patent, while it is said in the petition that some of the assignees 'stood upon the certificates.' Whether the language of the petition technically justifies the construction placed upon it by the supreme court of the state is immaterial. Certainly, there is no naming of any single tract as covered by certificate alone, and not patented, and if any tract was held under a certificate of location, it was, within the scope of the ruling of the supreme court, not subject to other entry or purchase."

In view of the state court's finding that no certificates were involved, it would seem that the statement of the U. S. Supreme Court that "if any tract was held under a certificate of location, it was, within the scope of the ruling of the supreme court [of Louisiana], not subject to other entry or purchase", was obiter, and the mere expression of opinion as to what the state court might have held, if, in fact such entries had been involved.

Frellsen v. Crandell was reaffirmed in Bowman-Hicks Lumber Co. v. Industrial Lumber Co., 127 La. 1057, 1058, 54 So. 349, but there again patent had issued for the McEnery scrip. Defendant also cites Burton Swartz Cypress Co. v. Baker-Wakefield Cypress Co., 163 La. 992, 113 So. 219. The only similarity to the case under consideration is that the land had been given to the state under the Swamp Land Act. The title of the defendant in that case was based upon a patent issued in compliance with section 2 of Act 248 of 1852, which gave actual settlers a preferential right of entry; while that of plaintiff rested upon an entry made on February 15, 1853, about a month before the defendant's application to prove his preferential right was filed March 16th of the same year. It appeared that the latter had commenced living on the property in 1850, and his assertion of preferential right was well within the year allowed under the Act of 1852. It was held that, during this time, that is, within the year of the effective date of this Act, lands so occupied by actual settlers, were not subject to entry by others. Again, the question in the

present case as to whether a certificate of entry, without subsequent patent, removed lands so entered from the jurisdiction of the land department, to the extent of preventing others from entering or purchasing them, was not involved.

The Act 86 of 1906, by its terms, applies only to certificates of entry. Its language is substantially the same as that of Act 85 of the same year dealing with patents. In the case of Betz v. Illinois Cent. R. Co., 52 La.Ann. 893, 24 So. 644, the court had before it squarely the question of the relative rights of one holding a certificate of entry upon swamp lands, passing to the state by this same Act of 1849, and another having a patent of a later date. The syllabus is by the court and number 5 thereof is quoted as follows:

"5. Title to public lands dates from the issuance of the certificate, and not from that of the patent; and the party holding a patent of date later than that of a certificate or warrant carries the burden of proving illegalities in the certificate necessary to make it prevail over the latter."

That suit, like the present one, was a *petitory action*, in which the plaintiff claimed under a certificate of entry and the conclusion was that the defendant, although holding under a patent, carried the burden of showing the illegality of plaintiff's entry. From this it would seem to follow, that defendant here, attacking plaintiff's entry, must establish its invalidity by showing that the lands involved were not among those recovered by McEnery.

This brings us to the plea of prescription by defendant under Act 62 of 1912, validating all patents by the state or its subdivisions, unless judicially attacked within six years. Defendant's patent in this case is dated June 2, 1906, and recites that it was issued "pursuant to homestead certificate number 1044 in U.S.L., dated May 28, 1897". In Atchafalaya Land Co. v. F. B. Williams Cypress Co., 258 U.S. 190, 42 S.Ct. 284, 66 L.Ed. 559, the Supreme Court affirmed a decision by the state court, holding that a state patent, after the six-year period, provided by Act 62 of 1912 would prevail over an earlier entry. In that case it appeared that by Act 97 of 1890 the Atchafalaya Levee Board was created and the auditor and register of the Land Office were directed to convey all lands received by the state under the

Swamp Land Grant of 1849, or otherwise acquired from tax sales or forfeitures, to the Board whenever application was made therefor. The Board did not make application for this particular land, but, nevertheless, sold the same along with others to Edward Wisner and John M. Dresser, binding itself to "perfect titles thereto". The Atchafalaya Land Co. acquired from Wisner and Dresser and the Board joined in that suit in an attempt to vindicate the title of its vendees. The Cypress Company made a cash entry of the same lands and obtained patent thereto subsequent to the creation of the Levee Board under the Act of 1890. In 1903 this company went into possession, which continued until the filing of the suit in the state court, April 26, 1919. Both the state and Supreme Court sustained Act 62 of 1912, and held the Cypress Company's title immune to attack. There does not appear to have been any question of prescription under either the 10 or 30 years provisions of the Civil Code.

The certificate of entry under which plaintiff claims does not, by its own terms, convey legal title, but as held in Betz v. Illinois Central R. Co., supra, in a contest between the holder thereof and one receiving a subsequent patent, the former would prevail in his contention that the land had been segregated from the public domain, unless the patentee discharged the burden of proving grounds for the invalidity of the certificate. So we come now to the question of fact in this case, as to whether plaintiff has held under a title translative of property accompanied by possession for the period necessary to prevail over the patent of defendant, as validated by the Act of 1912.

James M. Nealy, the entryman, under the certificate of entry, on November 4, 1889, conveyed the property to Lutcher and Moore by a title translative of property, if accompanied by the necessary possession in good faith, which was recorded in Beauregard Parish two days later. The nature of the possession exercised by Lutcher and Moore and their successors in title, including the present plaintiff, is set forth earlier in this opinion. Conceding, therefore, that the patent, after a period of six years, was immune to attack and that if defendant had followed up with an action for the property, he would have prevailed over plaintiff at that time, did this prevent or interrupt the running of the prescription of 10 years in plaintiff's favor?

The undisputed fact is that Whitman moved off the land in 1902, some four years before the patent was issued and recorded, and never again attempted to return to it until 1939, some 37 years later. The Act of 1912 was a statute of repose, insofar as the validity of the patent was concerned, and whether time be reckoned from its passage in 1912 or six years later, more than the necessary 10 years elapsed, during which plaintiff held possession of at least parts of the 80 acres covered by the deeds of itself and vendors. This possession was in good faith and sufficient to support its title. The plea of prescription does not constitute an attack on defendant's patent, but rests upon possession under a conveyance translative of property.

In view of the conclusion thus reached, it is not necessary to consider the plea of 30 years prescription. There should be judgment for plaintiff.