## No. 13,830.

## CHARLES H. WILLETT VS. M. D. ANDREWS, ET ALS.

### SYLLABUS.

1. Advertisement is not a prerequisite to the admissibility of the contents of a lost document when loss is established.
2. Parol testimony is admissible to prove the contents of a lost deed to land.
3. A private deed of sale is binding on the heirs of the vendor and on those to whom notice is traced, even though it has not been recorded.
4. A purchaser who seeks to oust those in possession of property and owners of the title, who had knowledge of an unrecorded deed and who remained silent some thirty years, is without right to recover a judgment for the property.
5. After the loss of the deed is shown, the question is one of weight of the testimony introduced in evidence to prove its contents. If the weight of testimony and all facts and circumstances sustain the claim to title, it will be held legal against one who does not show a better right to the property. The defendants are in possession and they and their ancestors in title have been in possession for a number of years under a recorded title. The *hiatus* in the chain of title is not one which can be of any avail to plaintiff.

APPEAL from the Thirteenth Judicial District, Parish of Grant.— *Blackman, J.*

*Robert P. Hunter,* for Plaintiff, Appellant.

*William C. Roberts* and *Horace H. White,* for Defendants, Appellees.

The opinion of the court was delivered by

BREAUX, J. Plaintiff brings this petitory action for the purpose of recovering a tract of land he describes as the east half of the southwest

quarter and the southeast quarter of the northwest quarter of section six in township six, north of range one east, and the northeast quarter of the northwest quarter of section seven of the same township and range, in the land district north of Red river, aggregating one hundred and sixty-one 63-100 acres.

The defendants admit that they are in possession of the property as alleged in the petition. They deny the bad faith alleged, and specially aver that one of the vendors, to whom plaintiff traces his title, was not a sole legitimate heir as plaintiff claims, and that, on account of his illegitimacy, this vendor did not, as plaintiff alleges, inherit the property and that he could not, in consequence, give title. Defendants plead the prescriptions of ten and thirty years in bar of plaintiff's demand, and, in the alternative, they deny that they are bound for rents and revenues, and against the claim for rent, they plead the prescription of three years. The salient facts of this case have already been stated; we will not restate them in detail. See Willett vs. Andrews, 51 Ann. 486. The case is before us on a second appeal. The judgment was rendered for defendants on the second trial. It is from this judgment that the plaintiff appeals.

The question of legitimacy is answered by the testimony on the second trial. It shows affirmatively that the vendor, Elias Parker, from whom plaintiff holds, was the legitimate son and only heir of Peter D. Parker. Witnesses who were present at the marriage testified to that fact. Their testimony is neither impeached nor contradicted. The officiating minister's name is given and something is said of a marriage license. The locality in this State where the marriage took place is named, and the date thereof is given. The vendor, whose legitimacy was questioned, was the issue of this marriage and the only heir.

The district judge, who heard the witnesses, in his opinion in rendering judgment, said: "I find from the record that Elias B. Parker was the legitimate son of Peter D. Parker and Mary Jane Parker, now Cooper." We think the testimony amply sustains that conclusion. But defendants insist that Peter D. Parker is not dead. We do not think that this insistance is sustained by the facts. It is shown, with reasonable certainty, that he died about the year 1865 and was buried in Cherokee county, in Texas. Witnesses, who are old residents of this State, testified that they were present during his last illness and that they attended his funeral. The district judge, in his opinion to which we have just referred, said: "I find, also, that the death of Peter D.

Parker has been established, he having died in Texas years ago." We think this conclusion is sustained by the facts.

We pass to a consideration of grounds urged by plaintiff against the admissibility of the testimony of Mrs. McKnight, who testified that her husband had been the owner of the property in controversy; that she, at the time—about thirty years ago—had the deed of sale in her possession showing his ownership of the property. She said that the land was entered in 1860 at the Monroe Land Office and names the grantee who went into possession after the entry of the land had been made by him and built a house on it. Later, in our decision, as the testimony has important bearing, we will excerpt further from the testimony of this witness. The question to which objection is urged is, "Was there a deed made to this land in controversy by Peter D. Parker (who held from the entry man by inheritance) and his mother to your husband, H. McKnight; have you seen the deed, or had it in your possession? Is it lost or destroyed?" It is objected that the asserted loss of the instrument had not been advertised.

We take up in the first place for decision the question regarding the necessity of advertising the loss of a document.

There are two articles in the Civil Code regarding the admissibility of the secondary evidence of a lost instrument, viz: 2279 and 2280. Under the first article cited, this court held, in Gordon vs. Fahrenberg, & Penn, 29 Ann. 367, that a destroyed deed need not be advertised, citing Beebe vs. McNeil, 8 Ann. 130, and Weaver vs. Cox and Hampton, 15 Ann. 463. Again, in the Succession of Woods, 30 Ann. 1002, this court held that advertisment was not a prerequisite to the admissibility of testimony of lost documents when the loss is established.

The rule of evidence laid down in the second article of the Code just cited, is controlling when the instrument is made the foundation of the suit, but here the instrument was not made the foundation of the suit, nor has it anything of a commercial character requiring advertisement. A missing link in the chain of title, as in this case, is not necessarily the foundation of the suit, rendering it necessary to advertise in order to be able to prove the loss.

Counsel for plaintiff objected in the second place on the ground that parol testimony is not admissible to prove title to real estate. This ground is sustained by law, but here the attempt was not made to prove title to real estate, but to prove the contents of a lost instrument. Wood's case, cited *supra,* gives rise to but one inference and that is

that if the instrument is lost or destroyed, then secondary evidence is admissible. In Sharkey vs. Bankston, 30 Ann. 891, the court admitted parol proof of contents of a judgment when it was shown that the record had been destroyed. The test of the admissibility is the loss or destruction of the instrument.

The *hiatus* in the recorded title covers a period from 1865 to about the year 1880. Since that time, several deeds have been signed by vendors and purchasers, and they have all been duly recorded. The widow of the grantee's successor in title was the first to testify in regard to the unrecorded asserted deed in the chain of title. She said she knew where the land in controversy is situated; that her husband had a deed to the land; that she saw it "many a time," and had it in her possession; that "it" (the deed) "is lost and when he" (her husband) "received the deed, he brought it home and gave it to me to take care of for him." (Parenthesis ours.) She mentioned a part of the consideration and said that this deed was signed by the vendors whom she named, but she did not remember who were the witnesses to the deed. Her husband had improved the land, had it surveyed, and it is shown by the testimony, that he, at one time, leased it.

Many years ago, the land was sold by this owner; no claim was made to it before plaintiff bought the title in the year 1893 from one of the descendants of the original grantee, from the government, who knew nothing about the title until about the time he transferred it to plaintiff for small consideration.

It appears that in the seventies, for a period of more than a year, plaintiff had been the lessee of H. McKnight, the owner under the asserted non-recorded title. This is not always admitted by plaintiff in his testimony, but it happens that his denials in this respect are fraught with admissions showing his lesseeship beyond question. Besides, there is other testimony corroborative of the lease from this owner, McKnight, to plaintiff also corroborative of the fact in addition to his own statement that he knew years ago of the deed in question by the Parkers, ancestors of his vendee, to McKnight. True, at times, as a witness, he stoutly denies all this, but taking the testimony as a whole, these recurring denials, while testifying, are more than counterbalanced by affirmative testimony.

The case is not a very strong one, but is strong enough to sustain itself against one who, because of the knowledge he had of an outstanding title is unable to show a better title. Sales were made of the land.

Improvements were constructed, and, after these many years, it would scarcely be equitable for the defendant to enrich himself at the expense of those who bought and improved in good faith. The land in question was of little value in 1860, owing to the depreciation caused by the Civil War. Titles were not handled and kept with the care they are since lands have become of value worth considering. There is law and there are decisions sustaining title under similar circumstances. A general statute provides for the restoration of lost papers. While the bearing upon the point in issue is not direct, but being to some extent *in pari materiae,* it may be considered here, *arguendo,* at least.

The provision of this statute is, that the oath of the plaintiff is to be taken as *prima facie* evidence of the existence and contents of the deed. There is analogy between the lost documents to which this statute refers and the mode of supplying the lost deed which defendants invoke. We pass from the consideration of the testimony of this witness, Mrs. McKnight (considering from the point of view of the statute, it makes out a *prima facie* title which plaintiff has failed to rebut).

In view of the loss, plaintiff was entitled to supply the loss. From Best on Evidence, p. 453, we quote: "I have always understood the rule to be that where a party is entitled to give secondary evidence at all, he may give any species of secondary evidence within his power." The American rule of evidence may not be as broad, but it does not, however, exclude parol testimony.

We are well aware that the admission of evidence of contents of a lost paper gives rise to important issues. There is no good reason, however, why the testimony should not be admitted and considered if it is evident that it serves to secure a right to which parties are justly entitled. The sincerity and candor of those who seek to prove contents of lost documents must be above all suspicion and, in addition, corroborative facts obtainable must not be withheld. The judge of the District Court, who is entrusted with some discretion in determining these facts, did not discover any attempted wrong, or the least injury sought in matter of supplying this title. We, on appeal, have not found that he has erred.

In the third place, plaintiff objected to the testimony to supply loss on the ground that it would be irrelevant and immaterial unless it was shown that the act was duly recorded. This position is correct as relates to third persons, but here the issue tendered by defendant was that the plaintiff is not a third person without notice. The fact is that

notice, in our view, was brought home to plaintiff who knew, in 1866, that McKnight was in possession of the property. We have seen that thereafter he became the lessee of the land. It also appears that to several witnesses he spoke of the sale and the price. From all the testimony we glean that plaintiff was not a stranger to this deed. If plaintiff had, at the time, raised questions now pressed by him upon our attention, the issues would be different, or if he, years after, had become aware that there was a *hiatus* or missing link in the title, the right he sets up would present itself in a different light. But warned as he was of a title and silent as he remained for more than thirty years, while the land was sold, improved, and passed into the hands of third persons and has become of some value, we do not think that he is entitled to recover.

We cannot overlook the fact that plaintiff's author, Elias Parker, knew nothing of any right in himself to this property; that his father, who had owned it, had left the State and never made the least inquiry about the title to this land. The construction of a railroad passing close by and the construction of a saw-mill near the land had given it value. Yet the purchase price mentioned in plaintiff's deed of purchase was only six hundred dollars, but it was much less, in reality, if the utterances of plaintiff are truly reported by two witnesses. True, defendant's author paid very little for the land. The difference is that the last is prior in date, and that parties for these many years held under it.

Recurring to the question of notice, it has been decided by this court that where notice has been traced to a vendee, it supplies the place of registry; and, further, that one is bound by the knowledge he has acquired of an unrecorded title, and that the "knowledge of the unrecorded title constitutes bad faith." Hennen's Digest, p. 1306, No. 21.

The views we have expressed and the conclusions at which we have arrived, relieve us from the necessity of passing upon the pleas of prescription interposed by the defendants.

For the reasons assigned, the judgment is affirmed.

PROVOSTY, J., takes no part, this case having been submitted prior to his taking his seat on this bench.

Rehearing refused.