(84 South. 334)

No. 22081.

BARRATARIA LAND CO. v. LOUISIANA MEADOWS CO.

(April 5, 1920.)

*(Syllabus by the Court.)*

1. BOUNDARIES ⟨⟩ 30—IN SUIT TO ESTABLISH BOUNDARY AS TO DEFENDANT OTHER PERSONS NEED NOT BE BROUGHT IN.

Where the purpose of a suit is merely to establish the boundary between the lands of the plaintiff and those of the party made defendant, it is not necessary, though it might be desirable, that other persons whose rights are not sought to be affected, and cannot be affected, unless they are made parties, should be brought in.

2. BOUNDARIES ⟨⟩ 3(3), 8, 40(1) — WHETHER BOUNDARY IS TO BE RE-ESTABLISHED WITH REFERENCE TO MISPLACED NATURAL OBJECTS OR TO FIELD NOTES IS FOR THE COURT; PERMANENT OBJECTS DO NOT ALWAYS CONTROL CALLS.

In an action of boundary between litigants claiming under government titles and surveys, the parties are entitled to have the lines re-established upon the ground as originally located by the government surveyor; but, where there are no lines or established corners to be found, and certain natural objects referred to in the field notes of the surveyor are admittedly misplaced, it becomes a question for a court to decide whether the original boundary is to be re-established with reference to the erroneous location of such objects or with reference to the field notes, not shown to be otherwise erroneous. The rule that the calls in a survey for natural and permanent objects will control other and conflicting calls, though of general, is not of universal, application, and such calls must yield when admitted to be erroneous.

Appeal from Twenty-Eighth Judicial District Court, Parish of Jefferson; John E. Fleury, Judge.

Action by the Barrataria Land Company against the Louisiana Meadows Company. Judgment for plaintiff, and defendant appeals. Judgment annulled, and case remanded for further proceedings.

Foster, Milling, Saal & Milling, of New Orleans, for appellant.

Sanders, Brian & Sanders, of New Orleans, for appellee.

Statement of the Case.

MONROE, C. J. This is an action to establish the boundary between lands claimed by the litigants, respectively, and lying in townships 16 and 17 south of range 23 east, Southeastern district of Louisiana west of the Mississippi river.

The allegations of the petition are, in substance:

That plaintiff owns the following described lands in township 16, to wit: Fractional section 27 (308 acres); fractional section 34 (241.35 acres) S. W. ¼ of N. W. ¼ and W.½ of 'S. W. ¼ of section 35 (120 acres)—and that defendant owns the following in that township, to wit: W. ½ of fractional section 26 and all of fractional section 35 except W. ½ of S. W. ¼ of N. W. ¼.

That plaintiff owns the following in township 17, to wit: All of fractional section 3 (454.75 acres); W. ½ of section 2 (160.32 acres); all of fractional section 10 (534.87 acres); W. ½ of N. W. ¼ of section 11 (80.05 acres); all of fractional section 15 except N. E. ¼ of S. E. ¼ (497.—acres); S. W. ¼ of S. W. ¼ of section 14 (40 acres); all of fractional section 21 (226.45 acres); all of section 22 (640.36 acres); and all of section 23, except N. E. ¼ (480 acres). That the lands last above described are bounded on

the east by the following tracts belonging to defendant, viz.: E. ½ of W. ½ of section 2; E. ½ of N. W. ¼ and W. ½ of S. W. ¼ of section 11; N. W. ¼ and S. E. ¼ of S. W. ¼ of section 14; S. W. ¼ of section 24.

"That the lands above described as belonging to petitioner include all the land lying between the Bayou Rigolettes, on the west, and the lands of the defendant, as hereinabove fully described, with the exception of the N. E. ¼ of S. E. ¼ of section 15 and N. W. ¼ of S. W. ¼ of section 14, township 17 south, range 23 east, which belong to some third person."

That some of the lines dividing petitioner's lands from those of defendant have never been established, while others were established by Rightor & McCollum, United States deputy surveyors, in 1840, but that all monuments, bearing trees, and other objects refered to in said surveys as being on or in the vicinity of, said lines have been obliterated and can no longer be found; that petitioner endeavored, unsuccessfully, to obtain defendants' consent to the fixing of the boundary extrajudicially; that defendant contends that the boundary should be, established approximately 30 chains further west than as contended by plaintiff, and that the area thus in dispute amounts to about 1,224 acres, worth, say, $5,000; that both litigants have caused research to be made for the old lines by competent engineers, who have informed themselves of the facts and who can, and will, furnish the court with all the data and assistance required to enable it to establish said lines; that petitioner therefore dispenses with the appointment of a surveyor as otherwise required by law; and that petitioner desires that the boundary in question be fixed by the court upon such evidence titles, reports, surveys, and plans as may be furnished by petitioner and defendant upon the trial hereof.

Defendant excepted on the grounds: (1) That all the owners of the lands the boundaries of which are sought to be established are not made parties defendant, and (2) that the petition discloses no cause or right of action. It then (after the overruling of the exception of nonjoinder, and the referring of the exception of no cause or right of action to the merits), answered admitting plaintiff's allegations of ownership, except as to the acreage claimed, and alleging title in itself to section 6 of township 16 south, range 23 east, and E. ½ of section 2, W. ½ of S. E. ¼ of section 14, N. E. ¼ of section 13, in township 17 south, range 23 east, admitting that some of the lines have never been established by actual survey, and alleging that Rightor & McCollum, United States deputy surveyors, pretended to survey certain of the lines in 1840, but denying that the surveys were actually made, and for lack of information denying that all the monuments have been obliterated, admitting that plaintiff's president requested defendant to fix the disputed boundary extrajudicially, and alleging that defendant agreed to join in the appointment of a surveyor who should make a survey and decide the controversy, but further alleging that plaintiff has failed and refused to appoint the surveyor and submit the matter to him, admitting that it contends that the boundary should be fixed 30 chains west of the line for which plaintiff contends, and that the disputed area embraces 1,224 acres, worth the amount stated by plaintiff, denying, for lack of information, that the surveyor employed by plaintiff was conversant with the matters relating to the lands in question, alleging that other persons besides plaintiff and defendant own lands in the township in which the lands in question are situated; that its titles are derived through mesne conveyances from the United States and the state of Louisiana, and its lands are therein described, according to the governmental subdivisions, as containing certain acreages set forth

in patents issued by the United States of dates anterior to the titles set up by plaintiff; that, if there is a shortage, it is due to errors in the location of streams in the township, for which defendant is not responsible; and that plaintiff's suit should be dismissed, or, in the alternative, that the boundary should be established as contended for by it.

The subjoined "Sketch" (partially explained by the legend thereon), though making no pretense of accuracy, may assist in an understanding of this opinion and of the relative locations of the lands, the boundaries of which are sought to be established. The shaded areas represent the lands of the plaintiff. The broken lines are those which are not shown to have been surveyed.

SKETCH OF PART OF T.16 S., R.23 E., AND T.17 S., R.23 E., ROUGHLY DRAWN FROM U.S. TOWNSHIP MAPS AND OTHER PLATS OF SURVEY FILED IN EVIDENCE.

Upon the trial of the case, plaintiff called to the stand Mr. W. A. Blalock, a civil engineer and surveyor, who spent some five months in the field surveying for the purposes of the case; and defendant called W. Y. Kemper and James S. Webb, also engineers and surveyors, who, testifying from the field notes of Rightor & McCollum and other data, including the notes produced by Blalock, have reached conclusions differing from those of that expert, the most material of their differences being as to the relative importance of certain natural objects mentioned in field notes of Rightor & McCollum as compared with the courses and distances therein set out, as to whether the survey of Rightor & McCollum was continuous, tying in from one township to the other, or consisted of independent and unrelated surveys of the two townships, taken separately, and as to the starting point eventually selected by Blalock for the purposes of this survey, as the results of which the western tier of sections in township 17 would be given 110 chains of width, the four tiers next in order 80 chains each, and the eastern tier 50 chains, thereby taking from defendant over 1,200 acres of land to which it holds apparent title from the United States antedating the titles exhibited by plaintiff, with the alternative of pushing the eastern township and range boundary line 30 chains farther eastward than the same lines of the township above and below, as shown by the government plats, an alternative which is said to be impracticable for the reason that in such case the line would impinge upon an ancient and confirmed Spanish or French grant.

Mr. Blalock admits that he found in township 16, an authentic government corner at the upper end of the line between sections 26 and 27, and another at some other point (probably the S. W. corner of section 25). The legend on the map of township 17 certi-

fied by the surveyor general in December, 1842, reads in part as follows:

"The north boundary was surveyed by Rightor & McCollum, Dept. Surveyors, and is included in T. 16, R. 23 E. The west boundary was resurveyed by same surveyors and is included in T. 17, R. 22 E. The south boundary, section lines, traverse, and claim of family of Boutte were surveyed by A. F. Rightor, February 1840," etc.

The east boundary of township 17, and many of the section lines seem never to have been surveyed, and are so indicated on the sketch.

### Opinion.

It appears from Blalock's testimony that using the field notes of Rightor & McCollum for the purposes of his survey in township 16, and finding two government corners in that township, he had no great difficulty in re-establishing the lines of the original survey; and, though he became aware, before the survey was completed, of the fact (upon which all the witnesses are agreed) that "Bayou Rigolettes," the "Cypress Woods," and "Little Temple" lie 30 chains to the eastward of the positions ascribed to them in the calls of those notes, he admits the correctness of the original survey in so far as the lands in township 16 are concerned, and the dispute as to the boundaries of those lands is thereby eliminated from this controversy.

For the purposes of his survey in township 17, however, he first took his start from the government corner X (as on the "sketch") and ran down, according to the notes, to Y, thereby establishing a corner common to sections 34 and 35 in township 16, and 3 and 2 in township 17, and fixing the position of the line constituting north and south boundary, respectively, of the two townships. He testifies that he was then able to see that the call of the notes for a passage through the "Cypress Woods," in township 17 could not be met, as he found the woods lying some

half a mile to the eastward of the course so called for; and he thereupon abandoned the established government corner from which he had started, and sought another point of departure in the southwest corner of township 17, and found it in "Little Temple," a shell bank mentioned, but not a corner established, by Rightor & McCollum in their survey of "the family of Boutte." The present length of that shell bank is said to be some hundreds of feet, but it is merely estimated and its length in 1840 is not even approximated in that way. Mr. Blalock admits that he then knew that Little Temple was 30 chains to the eastward of where Rightor & McCollum believed it to be, and where their notes locate it; but, proceeding upon the theory that it was a natural monument, he considered it as controlling the courses and distances set out in the field notes of those surveyors, and made his departure therefrom as he found the bank on the ground, and not as located by the field notes.

We find it difficult to understand why a shell bank which obtained a passing notice in the survey of "the family of Boutte"—a private grant, laid off without regard to sections, townships, and ranges—should be regarded as a monument in the survey of such governmental subdivisions, since the two surveys were wholly independent of, and bore but slight relation to, each other. However that may be, Mr. Blalock appears to have found his way from "Little Temple" across Bayou Rigolettes, and, by calculation, to have located upon the east shore of "Little Lake" a point from which he thought that Rightor & McCollum had taken their departure, though, according to their field notes, they started from the third post on the west boundary of the township and ran down to "Little Lake." (See Sketch.) In any event it is evident that, having adopted as his starting point a supposed monument admittedly

30 chains to the eastward of the line of the original survey and located on that line only through error, the error continued throughout, and hence, instead of relocating the original survey, Mr. Blalock has done original work and produced a survey of his own. His reasons for so doing do not alter the fact. They are spread over many pages of the transcript, and we make the following excerpt therefrom as embodying their substance, to wit:

"From their starting point at the corner on the eastern shore of Little Lake, take their traverse from there up to a point along the eastern shore of Bayou Rigolettes to the point marked 'U. S. bearing tree,' township 16 south, range 23 east; that closes very closely. Q. Mr. Blalock, as I understand your evidence in chief and · in rebuttal here, you have testified that township 16—23 east of Bayou Rigolettes does not tie in to the survey of 17—23 east of Bayou Rigolettes. A. They do not, the way I put them; no, sir; I don't think the way Rightor & McCollum put them there they do. Q. That is all I want to know; I don't care how you put them; what I want to know is whether or not, in your opinion, Rightor & McCollum's survey ties in. A. I don't think so; it ties in by calculation, but it does not tie in on the ground, on account of the changing of the conditions that I found to exist there. Q. Mr. Blalock, I want you to leave out 'conditions,' what you found down there, and just take the field notes and answer my question; take the field notes and courses and distances called for by the field notes, you understand, 16—23 and 17—23, and let me know if they tie in; take the field notes, and I ask you, do they tie in? A. You can take the field notes and, calculate the work yourself. Q. Well, now, they tie in, by calculation? A. Yes, sir. * * * Q. You will admit, now, that the surveys on the east side of Bayou Rigolettes in 16—23 and 17—23 form one survey, don't you? A. According to calculation; yes, sir. Q. All right, then, why don't you use them? A. Simply because there has been an error made in some points, in 17—23, in my opinion."

It is thus made apparent that, according to the admissions of the witness, the traverse or meander along the east banks of Little Lake and Bayou Rigolettes diagonally across from the southeast to the northwest corner of township 17 and for more than two miles into township 16 "closes very closely" (meaning, we assume, closes with line and corner as resurveyed by him), and that "the surveys on the east side of Bayou Rigolettes in 16—23 and 17—23 tie in "according to calculation"; and yet he denies that it was one survey in the sense that it was competent for him to start from a known corner in township 16 in order to re-establish the lines of that one survey in township 17, because the field notes mislocate Little Temple, Bayou Rigolettes, and the Cypress Woods, and, while so denying, he accepts the original survey as made in township 16, notwithstanding that Bayou Rigolettes is as much a monument in that township as in township 17, and rejects it as made in township 17, accepts the line constituting the lower boundary of township 16 as determinative of the width of that township, and rejects it, though it is shown by the certificate of the surveyor general to be the same line, as determinative of the width of township 17, and would project the eastern boundary of that township 30 chains beyond its eastern end.

Counsel for both litigants invoke the jurisprudence of the Supreme Court of the United States to the effect that—

"The power to make and correct surveys of the public lands belongs to the political department of the government, and that, whilst the lands are subject to the supervision of the General Land Office, the decisions of that bureau in all such cases * * * are unassailable by the courts, except by direct proceeding." (Cragin v. Powell, 128 U. S. 691, 9 Sup. Ct. 203, 32 L. Ed. 566, and authorities there cited)

—counsel for defendant asserting that plaintiff is endeavoring to correct the survey by ignoring the field notes as to the calls for corners and distances, and counsel for plaintiff asserting that defendant is endeavoring to make a correction by disregarding the calls for monuments.

[1, 2] The purpose of this suit, however, is not to correct the survey as made under the authority of the government, but to re-establish its lost lines and corners, and, for that purpose, to have it determined, as between the calls for courses and distances and the calls for monuments, which are likely best to subserve that purpose.

"In all cases the real question is, where the line was in fact located, not where it ought to have been located, and in determining this resort may be had to every kind of evidence to which it is competent to have recourse in proving any question of fact." 5 Cyc. 885.

"The general, though not universal, rule is that calls for natural or permanent objects in an entry, survey, or conveyance will control other and conflicting calls. Where, however, such a call is clearly erroneous and manifestly contrary to the intention of the parties, it will yield to other calls consistent with the true intent." Id., 916, 917; Jones v. Andrews, 72 Tex. 5, 9 S. W. 170; White v. Luning, 93 U. S. 514, 23 L. Ed. 938; Whitney v. Detroit Lumber Co., 78 Wis. 240, 47 N. W. 428; King v. Watkins (C. C.) 98 Fed. 913, reversed, but on the question of fact, in 118 Fed. 524, 55 C. C. A. 290; N. Y. & T. Land Co. v. Thomson, 83 Tex. 169, 17 S. W. 920; Clarkston v. Iron Co., 93 Va. 258, 24 S. E. 937; Hutch. Land Titles, 529.

The petition filed herein holds out the assurance that competent engineers have informed themselves fully concerning all the facts bearing upon the surveys made by the United States engineers of the townships in question, and will furnish the court with all the data necessary to enable it to decide upon the true location of the lines which form the boundaries between the lands of plaintiff and those of defendant. That assurance has not been made good, and we are unable to determine the true location of the lines in question.

As the purpose of the suit was merely to establish the boundaries between the land of the litigants, it was unnecessary, though it might have been desirable, to bring in parties whose rights are not sought to be affected, and cannot be affected, unless they are brought in. The exception of nonjoinder was therefore properly overruled. 9 C. J. p. 269, § 290, notes 95, 96. The exception of no cause or right of action was properly referred to the merits. The judgment on the merits fixing the boundaries as desired by plaintiff is not sustained by the law and the evidence, and must be annulled. Whether the litigants can find an adequate remedy in Act 182 of 1912 is a question that is not before us for consideration.

The judgment appealed from is annulled, and it is now ordered and adjudged that the case be remanded to the district court, to be there proceeded with according to law and to the views herein expressed, plaintiff to pay the costs of the appeal, and those of the district court to await the final judgment.