## CITY OF BIRMINGHAM v. LOUISVILLE & N. R. CO. et al.

(Circuit Court of Appeals, Fifth Circuit. March 13, 1924.)

No. 4020.

1. **Lost instruments ☞8(3)—All material parts must be established.**

   All material parts of lost documents, especially deeds and contracts, must be established.

2. **Dedication ☞46—Map showing express dedication in effect conveys property.**

   A map showing an express dedication has the effect of conveying property.

3. **Lost instruments ☞9—Evidence held insufficient for submission to jury as to whether land dedicated by lost map.**

   Testimony that lost map, more than 40 years before the trial, showed the land involved as a street, if admitted, would have been insufficient, in the absence of a showing that the witnesses carefully examined the map, or were familiar with its contents, to carry the question of dedication to the jury.

4. **Lost instruments ☞8(3)—Proof of contents of lost map must be full, clear, and satisfactory.**

   Proof of the contents of a lost map, to establish a dedication, must be full, clear, and satisfactory.

5. **Dedication ☞15—Question of implied dedication depends on owner's intention.**

   Whether a railroad, by permitting the public to cross its right of way, made an implied dedication of the land used as a crossing to the public, depends on the intention of the railroad.

6. **Dedication ☞41—Implied dedication not presumed, unless public use adverse.**

   The intention of a railroad to impliedly dedicate land used as a crossing will not be presumed, unless the public use be adverse to the private ownership.

7. **Dedication ☞20(6)—No implied dedication by railroad of land used for short period as crossing.**

   Though the public for a very short period of time used a crossing over railroad's right of way, where the railroad during all of such time paid taxes and made consistent use of its right of way, and for 30 years before the bill was filed continued in the exclusive and uninterrupted possession of the land, there was no implied dedication.

In Error to the District Court of the United States for the Northern District of Alabama; William I. Grubb, Judge.

Action by the City of Birmingham against the Louisville & Nashville Railroad Company and another. Judgment for defendants, and plaintiff brings error. Affirmed.

G. R. Harsh, of Birmingham, Ala. (W. J. Wynn, and Harsh, Harsh & Harsh, all of Birmingham, Ala., on the brief), for plaintiff in error.

John S. Stone, E. L. All, and William Douglas Arant, all of Birmingham, Ala. (Douglas Arant, and Tillman, Bradley & Baldwin, all of Birmingham, Ala., on the brief), for defendants in error.

Before WALKER and BRYAN, Circuit Judges, and FOSTER, District Judge.

BRYAN, Circuit Judge. This is an action of ejectment, brought by the city of Birmingham against the Louisville & Nashville Railroad Company, herein called defendant. There is another defendant,

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

but its only interest is that of a tenant. The land involved is 100 feet, the width of a street of the city called Nineteenth street, by 260 feet, the width of defendant's right of way, and is a part of the street if it extends across the right of way, as is claimed by the city. This area is now occupied, not only by railroad tracks, but also by defendant's office building, passenger station, and shed.

The city was laid off in 1871. In that year the Elyton Land Company, the owner of the original site, conveyed to defendant's predecessor in title a right of way running in an easterly and westerly direction entirely through this tract of land. The streets running north and south were given numbers, and it was a condition of the conveyance that only alternate streets crossing the right of way be kept open and unobstructed. In accordance with this condition the even-numbered streets were selected as the open streets, and the odd-numbered streets as the closed streets on both the north and south sides of the right of way. Three early maps found in the records of the Elyton Land Company were introduced in evidence. They were undated, but it was shown that the earliest of them was made by William P. Barker, a civil engineer. A number of each were used by the Elyton Land Company in the sale of lots. According to each of these maps, Nineteenth street was closed from one side to the other of the railroad right of way.

Several witnesses for the plaintiff testified that in 1871 or 1872 they had seen a map of the city, which one of them identified as a Barker map, hanging on the wall of the Elyton Land Company's office. They were asked whether that map showed Nineteenth street to be open through the right of way, whether they could describe the lines on the map at these points, and whether it was substantially like the maps in evidence, and, if not, to state the particulars in which it differed from them. But the trial judge sustained objections to these questions, and stated that he would not permit answers to be made to them, unless the witnesses could substantially reproduce or describe the missing map in its entirety, whereupon these witnesses stated they could not comply with this condition, and the city excepted.

Witnesses for the plaintiff testified that at first pedestrians frequently crossed the railroad right of way on Nineteenth street, and that occasionally, but not often, wagons and vehicles also crossed at the same place. However, it appears that the street was frequently blocked by railroad cars, and the use by the public gradually grew less until the station was built in 1886, after which such public use as there had been entirely ceased. The defendant, or its predecessor in title, has paid taxes on the right of way continuously since the foundation of the city.

At the close of all the evidence the court directed a verdict and entered judgment thereon for the defendant. The city assigns error, and contends that secondary evidence as to the contents of the map, which presumably antedated any of those admitted in evidence, was admissible, and shows an express dedication by the Elyton Land Company, and that the evidence admitted was sufficient to show an implied dedication by the railroad company.

297 F.—52

[1-3] The general rule undoubtedly is that all the material parts of a lost document must be established. This rule is particularly applicable to deeds and contracts. A map showing an express dedication has the effect of conveying property, and in order to determine its meaning it is frequently necessary to consider all its parts. It usually contains legends or explanatory notes, without which it is often impossible to arrive at its true meaning. However, in this case it is not necessary to go so far as to hold that, before the witnesses would be qualified to testify to the contents of the map, they should be able substantially to reproduce or describe the whole map. We prefer to rest our decision upon the broader ground that the testimony offered is too unreliable and unsatisfactory. Even if that testimony had been admitted, it would still have been the duty of the trial court to direct a verdict for the defendant. It is not shown that the witnesses ever carefully examined the map, or were familiar with its contents. Under these circumstances, their recollection as to what was disclosed by it with reference to Nineteenth street more than 40 years before they testified is of no evidential value whatever.

[4] In a case of this kind the proof must be full, clear, and satisfactory. Indeed, some courts, including the Supreme Court of the United States, hold that it must be such as to leave no reasonable doubt. Tayloe v. Riggs, 1 Pet. 591, 7 L. Ed. 275; Renner v. Bank of Columbia, 9 Wheat. 581, 6 L. Ed. 166; Shorter v. Sheppard, 33 Ala. 648; Geter v. Simmons, 57 Fla. 423, 49 South. 131; Edwards v. Rives, 35 Fla. 89, 17 South. 416.

[5-7] There is no claim of abandonment, and whether there was an implied dedication depends upon the intention of the defendant. Such intention will not be presumed, unless the public use be adverse to the private ownership. Irwin v. Dixion, 9 How. 10, 13 L. Ed. 25; Gage v. Mobile & Ohio R. R. Co., 84 Ala. 224, 4 South. 415; The Attorney General v. Lake View Land Co., 143 Ala. 291, 39 South. 303. A very limited use of the defendant's right of way, if consented to at all, was shown, and it continued for but a short period of time. The defendant all the time paid taxes, and from the beginning made consistent use of its right of way, and for 30 years before the bill was filed continued in the exclusive and uninterrupted possession of it. The undisputed evidence repels the suggestion of an implied dedication.

The judgment is affirmed.