**LA TERRE CO., Inc., v. BILLIOT'S
SHELL ISLAND, Inc.
No. 8765.**

Circuit Court of Appeals, Fifth Circuit.
April 5, 1939.

54

R. C. Milling, of New Orleans, La., for appellant.

Esmond Phelps, of New Orleans, La., and Edward T. Weeks, of New Iberia, La., for appellee.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

HOLMES, Circuit Judge.

This appeal is from a decree dismissing appellant's bill to quiet and confirm title to a tract of land in the State of Louisiana, known as Billiot's Shell Island. Denying appellant's prayer for relief, the decree grants the prayer of appellee's answer by way of cross bill, and decrees that the island is situated within the calls of appellee's deed, and that appellee is the owner thereof in fee simple.

Title to the land in question passed from the United States to the State of Louisiana by the swampland grants of 1849 and 1850, under selections duly made by proper officers of the State, and approved by the United States. By Act No. 104 of 1871, the Louisiana Legislature provided that such lands as should be surveyed and approved according to law should be subject to entry and sale at twelve and a half cents per acre, the person applying for entry of said lands being required to make oath that the entry was to be made for his own use, settlement, and cultivation; that the Register of the State Land Office be authorized to sell such lands for $1.25 per acre, not to exceed 160 acres to any one person; that such lands as were subject to tidal overflow, and therefore unfit for cultivation, might be sold for twenty-five cents per acre, on presentation of satisfactory proof of such fact; that as there were many bodies of land granted in bulk, through which township and section lines had not been run, it should be the duty of the Register to have such surveys made as might be necessary; and that the Register should provide necessary tract books, and record sales therein, and preserve the maps and lists then on file. Other provisions of the act have no bearing on this case.

Entirely surrounded by marsh land, Billiot's Shell Island is inaccessible except by boat. In 1877, Jean Verret, an Indian residing on the mainland near the island, which was located in a large body of unsurveyed land, approached Eddie Foulkes, surveyor of the parish, with the view of obtaining title to the island. Foulkes collected $5 from Verret as the purchase price for actual settlement and cultivation of the land, which sum was later paid to the State and a receipt therefor issued. For a consideration of $88, Foulkes made a survey of the land, running lines from points established by the Government survey to a lake adjacent to the island. From there, Foulkes pointed his instrument across the lake and established the location of the island as being in the S. W. ¼ of N. E. ¼ of Section 3, Township 19, South of Range 15 East. A proper application was executed by Verret, the above description being used. He immediately went into possession of the island, and, in accordance with the application and receipt, a patent was issued in due course. The patent is regular on its face, and describes the land as above with the recitation that the description is according to the official plat of the survey of said lands in the State Land Office.

In 1884, the title thus acquired by Verret passed to Joseph Victor Billiot, who erected a dwelling house on the island in 1885, and resided there until his death in 1895 or 1896. Thereafter, his widow and children continued to reside on the land until the house was destroyed in 1909. From 1884 until 1923, Billiot and his successors enjoyed the exclusive use and possession of the property, using it for planting, fishing, and trapping.

By a series of transactions, the title of the Billiots passed to appellee. Under the provisions of Act No. 97 of 1890, the State of Louisiana granted to the Board of Levee Commissioners for the Atchafalaya Levee District numerous tracts of land, among which was "all Sec. 3 except S. W. ¼ of N. E. ¼ 600 [acres] * * * all in T 19 S. R. 15 E." The title to lands embraced in this description thus acquired by the Levee Board passed by mesne conveyances to appellant.

Appellant does not question the title of appellee to the Southwest quarter of the Northeast quarter of Section 3, Township 19, South of Range 15 East, but contends that the island is not located within this description. A search of the State Land Office reveals that no map or plat of the survey is on file, nor does it reveal any

record of the appointment of Foulkes to make a survey. The district court held that, it being admitted that a valid patent had been issued to Jean Verret, the reference in the patent to the survey incorporated the survey within its description, and established a presumption that the Register caused the survey to be made; and, the evidence showing that the description was of the island as located by the survey, that appellant had failed to prove its title.· La Terre Co. v. Billiot's Shell Island, D.C., 20 F.Supp. 106.

Appellant's first assignment of error is that there is no proof that Foulkes acted for the State in making the survey, that the survey was filed and approved by the Register, or that the entry was made and the patent issued pursuant to the survey. The second assignment is that the survey could not be binding upon appellant, a third person who acquired upon the faith of the public record, for the reason that the survey does not appear in the State Land Office.

When it is determined that an entryman or purchaser of public lands has done all that is required of him, and that the land is subject to entry or sale, the issuance of the patent is a mere ministerial act, even though the ascertainment of the necessary prerequisites requires an administrative determination. By holding the land for sale or entry, the State obligates itself to vest the title in the purchaser or entryman. By entering the land and paying the price, all other requisites being satisfied, the entryman becomes vested with an equitable title. The administrative determination which must intervene between the vesting of the equitable title and the conveyance of the legal title is a finding of facts upon which the equitable title vested. It is not judicial in nature, not being based upon notice or hearing, and not being an adversary proceeding. The governmental agency clothed with authority to make the determination is the guardian of the public interest, and the sovereign does not finally recognize the rights of the individual applicant until that agency has been satisfied that the requisite facts have been established. Whatever ministerial act follows upon the administrative determination is conclusive evidence of the facts necessarily found, until appropriate proceedings have resulted in the act being set aside.

In the instant case, we start with a presumption, made conclusive by the presence of a valid patent, that Jean Verret lawfully entered the Southwest quarter of the Northeast quarter of Section 3, and that there was an official map or plat of said section on file in the office of the Register. This map or plat became as much a part of the patent to Verret as if it had been fully set out therein. The land patented to him was the land shown on that plat to be the land described in the patent. Perry v. Board of Commissioners of Caddo Levee District, 132 La. 415, 61 So. 511; Leader Realty Co. v. Lakeview Land Co., 142 La. 169, 76 So. 599; Houston Ice & Brewing Co. v. Murray Oil Co., 149 La. 228, 88 So. 802; Barrataria Land Co. v. Louisiana Meadows Co., 146 La. 999, 1008, 84 So. 334; Burton Swartz Cypress Co. v. Baker-Wakefield Cypress Co., 163 La. 992, 998, 113 So. 219; State v. Sweet Lake Land & Oil Co., 164 La. 240, 253, 113 So. 833. Cf. St. Louis Smelting & Ref. Co. v. Kemp, 104 U.S. 636, 26 L.Ed. 875.

Proof that the map or plat thus established is not to be found in the records raises an inference of fact that the official document has been lost. The only question that remains is whether or not the official map or plat located the island within the description in the patent. The evidence clearly shows that it was so located by the Foulkes survey. The absence of proof of any other survey, and the showing that the Foulkes survey was made for the very purpose of securing title to the island, raises an additional inference that his map or plat became official, not as an inference from facts presumed from the issuance of the patent, but as a result of the probative effect of evidence of basic facts. The only evidence to mitigate the effect of this proof is that later surveys, perhaps more accurate, disclose errors in the Foulkes survey; but it is not necessary to the validity of the survey that it correspond to any other survey, or that its boundaries be true extensions of the lines run by other surveyors. Its correctness and sufficiency were established by its acceptance by the Register as the official plat, which is a component part of the presumption arising from the issuance of the patent. It follows that the fee-simple title to the island passed to Jean Verret under the patent.

The argument of appellant that the Foulkes survey could not be binding upon it proceeds upon the assumption that it never became an official record. As

56

shown above, the presumptions attendant upon the issuance of the patent negative this assumption at the outset. The record of the patent, not to mention the recitations contained therein, was a caveat that a survey had been made, filed, and approved. Anyone buying land in that section was charged with notice that a survey had been·made, and with what that survey would show if it appeared among the records. This is not in conflict with the cases relied upon by appellant. Those cases merely emphasize the rule that a document not properly recorded is no notice, or that one properly recorded in the Land Office, but not recorded elsewhere, is notice. There was no error in the ruling of the court allowing parole testimony to show the contents of the lost record. Willett v. Andrews, 106 La. 319, 30 So. 883; Simmons Creek Coal Co. v. Doran, 142 U.S. 417, 12 S.Ct. 239, 35 L.Ed. 1063; Sharon v. Tucker, 144 U.S. 533, 12 S.Ct. 720, 36 L. Ed. 532; City of Birmingham v. Louisville & Nashville R. Co., 5 Cir., 297 F. 816.

The judgment of the district court is affirmed.