LAND, J.
 

 This is the fifth time that this litigation has been before this court in one form or another.
 

 The history of the different suits between plaintiff and defendant companies is fully reviewed in the case of Burton-Swartz Cypress Co. v. Baker-Wakefield Cypress Co., 143 La. 686, 79 So. 221.
 

 It appears that in all of the former suits only the question of possession of the N. W. of section 54, township 12 south, range 15 east, and of the cypress timber thereon, or taken therefrom, had been involved.
 

 In the 143 La. ease, plaintiff company, alleging that it had possession of the timber, sued to recover the possession or value of only the lumber that had been manufactured by defendant company from the timber taken after the lumber was released from sequestration on a forthcoming bond.
 

 It was held in that case that the defendant, and not the plaintiff, was in possession of the land and timber.
 

 While plaintiff’s suit was dismissed as a possessory action, the right was reserved to plaintiff to renew its demand for the value of the timber, in a petitory action, or by asserting title to the land and timber.
 

 The 143 La. ease was decided April 29,1918, and rehearing was denied June 29, 1918.
 

 The present suit was filed'September 12, 1918, under plaintiff’s reservation of right in the decree in the 143 La. case, and the issue as to the ownership of the land and timber in question Is now presented to us for final decision.
 

 Plaintiff company alleges that it acquired the N. W. % of section 54, .township 12 south, range 15 east, by mesne conveyances from E. C. and J. E. Mire, who entered this quarter section from the state on February 15,1853.
 

 Defendant company claims title to the timber only, and traces the title to the land and timber from its immediate author through an unbroken chain to A. D. Truxillo, who entered the land under preference right from the state March 16, 1853, and who later received a patent from the state February 21,1859.
 

 
 *995
 
 Plaintiff company asserts that it has the older and better title, because J. E. and E. O. Mire had made a prior entry of this quarter section on February 15, 1853, one month before the entry made by Truxillo.
 

 No patent was ever issued by the state to the Mires, and, in our opinion, the purported entry made by them was, at best, only a defeasible title.
 

 These entries were made under Act 248 of 1852, but under conditions entirely 'different.
 

 Act 248 of 1852 is entitled:
 

 “An act to provide for the sale of a portion of the swamp and overflowed lands granted to the state, by Acts of Congress, approved 2d March, 1849, and 28th September, 1850,- and to appropriate the proceeds thereof.”
 

 Section 1 of the act declares:
 

 “That the register of the land office and treasurer of the state as receiver of public moneys, shall be, and are hereby authorized to sell warrants for one million acres of land, to be located on the swamp or overflowed lands donated by acts of Congress of 2d March, 1849, and 28th September, 1850, said warrants to be issued for not more than six hundred and forty, nor less than forty acres, according' to the laws regulating the surveys and legal subdivision of sections adopted by the United States; provided, the same shall not be sold for less than one dollar and twenty-five cents per acre; and provided further, that no warrant shall be issued until the expiration of three months after the passage of this act.”
 

 Section 2 of said act provides :
 

 “That every white person being the head of a family, or over twenty-one years of age,
 
 who has made a settlement in any part of said
 
 lands,
 
 previous to the passage of this act,
 
 shall have the privilege of entering not less than forty, nor more than three hundred and twenty acres, of the same, at the office of the state land office at Baton Rouge, at the minimum price of one dollar and twenty-five cents per acre;
 
 provid
 
 ed,
 
 that application and payment thereof he made before the expiration of twelve months after the passage of this act;
 
 and' provided, further,
 
 that the party thus applying for a preference right
 
 shall make oath before some officer of the state qualified to administer the same, that he or she had settled on the land applied for, with the view and purpose of cultivating the same, and not for purpose of speculation, and shall state as near as may be the date of such settlement, which oath, as to the location and settlement, shall be sustained by the affidavit of two disinterested witnesses.”
 

 Section 3 of the act declares:
 

 “That all conflicting claims of preference right to any of said lands, shall be decided by the register, who shall adjudge the same to the person first locating or settling thereon.”
 

 Section 4 of the act declares:
 

 “That the register of the state land office shall procure plats or maps of all the swamp lands donated to Louisiana, certified by the surveyor general, and shall mark thereon, and on each tract of land purchased, the name or the initials of the name of its purchaser, and shall also keep a well bound book in his office, in which shall be entered in proper form all the lands thus sold, to whom sold, and for what price, which said book and maps shall be carefully preserved, and shall be deemed
 
 oficial records.”
 

 The application made by A. D. Truxillo to purchase the land in dispute is as follows:
 

 “Land Office of La.:
 

 “March 7, 1853.
 

 “I, Augustin D. Truxillo of the parish of Assumption, being the head of a family, had,
 
 before the 17th day of March 1852, settled upon
 
 the northwest quarter of the section fifty-four, township No. twelve south, range No. fifteen oast in the southeastern land district of Louisiana, containing one hundred and sixty-four and i%oo acres. I made said settlement in the year 1850 for the purpose of cultivation and not speculation. I do hereby apply to purchase the land above described
 
 under the second section of an act of the Legislature, approved 11th March, 1852, entitled ‘An act to provide for the sale of a portion of the swamp and overflowed lands, etc.’
 

 “[Signed] Augustin D. Truxillo.
 

 “Subscribed and sworn to.
 

 “State of Louisiana, Parish of Assumption.
 

 “Personally appeared Joseph Fernandez and Lessin Melancon on the 12th of March 1853, who being sworn say it is within their own knowledge that Augustin D. Truxillo settled the land above described before the 17th day of March 1852. [Signed] Jose Fernandez.
 

 “Lessin Melancon.
 

 “Subscribed and sworn to at the parish of Assumption this 12th of March, 1853, before me.
 

 “[Signed] J. Cronant, Justice of Peace.”
 

 
 *997
 
 The application of A. D. Truxillo is not only upon its face an application to purchase by preference as a settler under section 2 of Act 248 of 1852, but this application is indorsed: “Pref. right 122 A. D. Truxillo, filed March 15th, 1855, N. W. % Sec. 54, T. 12 S., R. 15 E. S. E. D.”
 

 It also appears from certified copy of warrant No. 913 for 164.16 acres, issued under section 1 of Act 248 of 1852, that said warrant was purchased by A. D. Truxillo from the land office at Baton Rouge, La., for $205.20, or at $1.25 per acre, to cover his pre-emption right to the N. W. % of Sec. 54, T. 12 S., R, 15 E. S. E. D.
 

 From a copy of page 39 of the “Warrant Sales Book” of the land office at Baton Rouge, it is shown that warrant 913 was used by Truxillo to purchase the quarter section in dispute, and that the purchase was acted on and approved by the land office at Baton Rouge.
 

 The date of this purchase was March 16, 1853, or before the expiration of twelve months after the passage of the act, which was approved March 17, 1852. On March 16, 1853, Act 248 of 1852 was amended so as to extend the preference right of settlers under section 2 of the act for one year; the amendment to go into effect immediately. Act 56 of 1853, p. 35.
 

 It is not pretended in this case that the Mires had settled on this quarter section prior to the passage of Act 24S of 1852. Therefore they had no preference right to assert as entrymen.
 

 To hold that, because the Mires had entered this land prior in time, they were therefore prior in right, and acquired a valid and indefeasible title, would be to make a dead letter of section 2 of Act 248 of 1852 giving to settlers on the public lands, prior to its passage, a preference right to be exercised before the expiration of twelve months after the passage of this act.
 

 As far as nonsettlers are concerned, they had no absolute or perfect right whatever to enter any lands settled prior to the passage of Act 248 of 1852, until after the expiration of twelve months from the passage of the act. If they attempted prematurely to do so, they acted at their own peril, and acquired no title under the act that was binding, either upon the actual prior settler, or upon the state, in case of conflicting claims.
 

 This is made plain by section 3 of Act 248 of 1852, which declares:
 

 “That all conflicting claims of preference right to any of said lands,
 
 shall he decided hy the register,
 
 who shall adjudge the same
 
 to the person first locating or settling thereon.”
 

 The register of the land office of Baton Rouge was clothed with express authority, under the above section of Act 248 of 1852, to decide as to the conflicting claims of the Mires and of Truxillo, and adjudicated the land in dispute to Truxillo, under his claim of preference right to enter same, as the person first settling thereon, and a patent was issued to him by the state.
 

 It is a legal presumption that the officers charged with the executing of land grants have fulfilled their duty in regard to the several acts to be performed by them, and that patents of land, regular in all respects, have validly issued. A patent granted by the state is the completion of the legal title. 22 R. C. L., Public Lands, See. 86, p. 340; Slattery v. Kellum, 114 La. 282, 38 So. 170; Winter v. Jones, 10 Ga. 190, 54 Am. Dec. 379.
 

 Plaintiff company bases its claim to ownership solely upon the Mires’ entry of February 16, 1853, as the older title. No attack is made by plaintiff upon the patent issued by the state to Truxillo in 1859, for want of form or for defect apparent upon its face. It is declared in plaintiff’s brief that this is not a suit to annul a patent, but that the Mires’ entry,
 
 *999
 
 under which plaintiff claims, being- prior in time, is prior in right.
 

 The patent in this case appears in all respects regular, and we must assume it to have been validly issued, and upon that basis determine the-rights of the parties within the limits of their pleadings.
 

 ¿5] The effect of the issuance of- the patent by the state to Truxillo was to vacate the entry made by the Mires, and to vest in the páten'tee a complete legal title to the quarter section in question.
 

 The tract of land in dispute formed a part of Truxillo’s Delia plantation, upon which he resided in the 50’s, 6‘0’s, and 70’s, cultivating it as a sugar plantation.
 

 Defendant company bought the timber from C. W. Moore and the heirs of R. M. Moore in the year 1906.
 

 ■ The Moores acquired from Mrs. Marie Truxillo, widow of Numa Yives, on March 8, 1000.
 

 Mrs. Vives inherited the property from her father, A. D. Truxillo, the patentee, of whom she was the only child and sole heir.
 

 Under this state of facts, defendant com-I>any. must be adjudged the true and lawful owner of all of the timber on the quarter section in controversy, and plaintiff company's demand, as owner, for the payment of the value of the timber taken from this tract by defendant company in the year 1911, and manufactured by it into lumber, must be rejected.
 

 The patent issued by the state to Truxillo is upheld by the judgment of the lower court as the legal title to this property, and defendant company, claiming through mesne conveyances under said patent, is decreed to be the lawful owner of the timber on said quarter section.
 

 The judgment also rejects the demands of plaintiff company and dismisses its suit.
 

 For the reasons herein assigned, the judgment appealed from is affirmed.