## LA TERRE CO., Inc., v. BILLIOT'S SHELL ISLAND, Inc.

### No. 29644.

District Court, E. D. Louisiana.
July 26, 1937.

Milling, Godchaux, Saal & Milling, of New Orleans, La. (R. C. Milling, of New Orleans, La., of counsel), for plaintiff.

Spencer, Gidiere, Phelps & Dunbar and Philip S. Gidiere, all of New Orleans, La., and Weeks & Weeks, of New Iberia, La. (Edward T. Weeks, of New Iberia, La., of counsel), for defendant.

BORAH, District Judge.

This is a suit in equity in which the La Terre Company, Inc., plaintiff herein, seeks to be quieted in its alleged possession and ownership of a certain tract of land known as Billiot's Island. Plaintiff alleges that it is the owner and is in possession of 20,-098.03 acres of land in township 19 south, range 15 east, in Terrebonne parish, including all of section 3 except the southwest quarter of the northeast quarter; that it acquired this land by mesne conveyance from the board of commissioners of the Atchafalaya Basin Levee District (hereinafter called the levee board); that the levee board acquired the property by grant from the state of Louisiana under Act No. 97 of the General Assembly of the state of Louisiana for the year 1890; that under and in accordance with the provisions of said act, said lands were conveyed by the register of the land office and the auditor by a written instrument of date April 26, 1901, which was recorded in the conveyance records of Terrebonne parish May 11, 1901; that the state acquired title by donation from the United States government under the Swamp Land Grants of 1849 and 1850, said lands having been duly selected as swamp by the proper officials of the state of Louisiana on August 9, 1850, and duly approved by the proper officials of the United States government on May 6, 1852.

After setting forth its chain of title and its claim to ownership and possession of the lands, the plaintiff alleges that on August 21, 1925, defendant did cause to be recorded in the conveyance records of the parish of Terrebonne a certain written instrument dated August 10, 1925, whereby and whereunder Mrs. Joseph Verret Billiot, and certain other persons therein named, did convey to the defendant the southwest quarter of the northeast quarter of section 3, township 19 south, range 15 east, of the southeastern land district of Louisiana west of the Mississippi river, which is the only portion of said section 3 not owned by plaintiff, and did also pretend to convey a certain tract of land lying west of Lake Penchant known as Billiot's Island, which island, according to the recital in the deed, had been owned and possessed by the vendors and their forebears for many years and on which it is declared shell mounds are located.

The petition then sets forth that there are located within the confines of the lands belonging to plaintiff certain shell mounds, one of which is in section 3 of this township; that plaintiff is informed and believes that defendant herein, under and by virtue of the instrument dated August 10, 1925, claims to be the owner of certain property belonging to plaintiff which is situated in section 3, township 19 south, range 15 east, beyond the confines of the southwest quarter of the northeast quarter of said section, and particularly claims to own all or a portion of a shell mound situated within the confines of said section 3 and which is embraced within the calls of, and which is a part of plaintiff's land. Further, that plaintiff is not informed as to whether defendant holds a good and valid title to the southwest quarter of the northeast quarter of section 3, township 19 south, range 15 east, which land, plaintiff avers, was patented on July 19, 1878, by the state of Louisiana to Jean Verret, but that if the

defendant does in fact own the 40 acres, that said quarter of the quarter section is the sole and only land owned by it in said township. Then follows the allegation that the conveyance to defendant of the property designated as Billiot's Island was illegal, null, and void, did not vest any ownership or title in and to defendant, and was in violation of petitioner's property rights; and as defendant had no valid claim or interest in and to any shell islands located on said lands, that plaintiff was entitled to hold its lands free, clear, and released and discharged from the claims of defendant, which claim on the part of defendant had prevented plaintiff from leasing said lands. The inadequacy of a remedy at law to protect it from the irreparable damage caused by the claim of the defendant is alleged, and then follows the prayer of the petition in which plaintiff asks that it be decreed that it is the legal owner and possessor of all the lands described in its petition, and that it be quieted in its title and possession, and that the alleged claim of the defendant be removed as a cloud upon its title, and that the defendant be enjoined from interfering with the plaintiff's title or possession or asserting any claim to the lands belonging to plaintiff.

The answer denies plaintiff's claim to ownership and possession of these lands and sets up four separate, distinct, and alternative claims of title to the property: (1) That Jean Verret patented the island in controversy under Act No. 104 of 1871, from the state of Louisiana, its then owner, on July 19, 1878, and that defendant has from him a perfect title through transfers and inheritance. (2) That even though the island was situated beyond the southwest quarter of the northeast quarter of section 3 and was not patented to Jean Verret, the fact remains that in 1884 Joseph Victor Billiot built and occupied with his wife and children his home on the island, settled thereon, and was in such possession of the island in 1890 as entitled him to all the pre-emption rights granted to such possessors under Act No. 21 of 1886; that the state had granted to the levee board, and the conveyance by the register and auditor to the levee board had transferred only vacant lands and lands as to which third parties had acquired no possession or rights, consequently any deed from the state that purported to convey said island was in disregard of Billiot's rights as a pre-emptor,

and was absolutely null. (3) That defendant and its authors had possessed the island for more than thirty years and had acquired it by the prescription of thirty years. (4) That the claim asserted by petitioner in this suit has become stale and that plaintiff is guilty of laches, which laches, defendant specially pleads as a bar to this suit.

It appears from the pleadings and from the evidence that the state of Louisiana acquired under the Swamp Land Grant 10,250 acres of unsurveyed land in township 19 south, range 15 east, and that the United States government had not surveyed the lands in section 3 though other sections and parts of sections in the southern portion of this township were surveyed by the federal surveyors, Rightor and McCollam.

On July 19, 1878, the state patented to Jean Verret the southwest quarter of the northeast quarter of section 3, containing 40 acres, but there is presently no record in the state land office of the field notes and the plat of survey which furnished the basis upon which the said patent was issued. Verret transferred his interest to Etienne Clerville Billiot, who in turn sold to Joseph Victor Billiot. On August 21, 1925, the widow and heirs of Joseph Victor Billiot, joined by others, conveyed to defendant not only the southwest quarter of the northeast quarter of section 3, but also Billiot's Shell Island which they describe.

It further appears that the Legislature of Louisiana by Act No. 97 of 1890 donated to the levee board all lands belonging to the state within the limits of that levee district, and on April 26, 1901, the register of the land office and the auditor of the state did in furtherance of that authority convey to the levee board approximately 21,000 acres of land in this township, including all of section 3, except the southwest quarter of the northeast quarter. The levee board then sold this property to plaintiff's author in title, plaintiff acquiring its alleged ownership on February 4, 1927.

The defendant claims that Eddie Foulkes[1] actually surveyed the southwest quarter of the northeast quarter of section 3 upon the application for entry of the land by Jean Verret, and that Billiot Island was contained within that description. The plaintiff with equal vigor asserts that Foulkes made no survey under authority of the state, and that even if he did, such survey could not be binding on plaintiff as it

---

[1] This name is spelled four different ways in the testimony

was never filed of record in the state land office. Plaintiff likewise maintains that the objection which it made at the trial is well founded in law, and that no evidence concerning this survey and this lost map should be considered for the reason, among others, that the effect of such evidence is to establish title to real estate by parol. The plaintiff therefore takes the position that since the defendant has not produced a survey of this disputed area it finds itself in no different position than that of plaintiff, in that they both hold title to an area not segregated by a state survey. Therefore, it is argued, that since neither the state nor the federal government has jurisdiction in the premises, the court must consider the evidence of private surveyors and determine the question presented by extending the lines of the United States surveys across the unsurveyed area in accordance with the federal statutes and the rules and regulations of the general land office governing resurveys. If this is done, it is confidently asserted that plaintiff's surveys will be found correct and the island located in the west half of section 3.

Under this state of facts it is apparent that if Billiot's Island is located in the southwest quarter of the northeast quarter of section 3, plaintiff has no claim thereto and defendant is vested with legal title and is the owner thereof. Conversely, if it be found that this island is not located in this quarter of the quarter section, then plaintiff is vested with title unless defendant and its authors have acquired by prescription or otherwise a title paramount to that of plaintiff.

At the outset, therefore two related questions are presented for decision, (1) whether a survey was made under authority of the state and filed in the land office prior to the issuance of the patent to Jean Verret, and if this be established (2) has the defendant by competent evidence identified Billiot's Island as the land which was surveyed as the southwest quarter of the northeast quarter of section 3.

■ The patent to Jean Verret contains the express declaration that the lands were sold to him for settlement and cultivation "according to the official plat of the survey of said lands in the State Land Office." It was signed by Gov. Francis T. Nicholls and L. Fremaux, register. Act No. 104 of the General Assembly of the state of Louisiana for the year 1871 required that the officers of the government know that the survey had

been made and filed before they could sign and issue the patent. Furthermore, plaintiff admits that a valid patent to the southwest quarter of the northeast quarter of section 3 issued to Jean Verret, which admission would seem to carry with it the like admission that all of the requirements preliminary to the issue of the patent were complied with. In any event, such a conclusion is warranted under the authorities. In St. Louis Smelting & Ref. Co. v. Kemp, 104 U.S. 636, 640, 26 L.Ed. 875, 877, the court said:

"The execution and record of the patent are the final acts of the officers of the government for the transfer of its title, and as they can be lawfully performed only after certain steps have been taken, that instrument, duly signed, countersigned and sealed, not merely operates to pass the title, but is in the nature of an official declaration by that branch of the government to which the alienation of the public lands, under the law, is intrusted, that all the requirements preliminary to its issue have been complied with. The presumptions thus attending it are not open to rebuttal in an action at law. It is this unassailable character which gives to it its chief, indeed, its only value, as a means of quieting its possessor in the enjoyment of the lands it embraces."

See, also, Newsom v. Pryor, 7 Wheat. 7, 5 L.Ed. 382; State v. Sweet Lake Land & Oil Co., 164 La. 240, 253, 113 So. 833; Burton Swartz Cypress Co. v. Baker-Wakefield Cypress Co., 163 La. 992, 998, 113 So. 219.

In addition to the conclusive official declaration on the face of the patent that the survey was then on file, the defendant after a lapse of fifty-five years was able to produce as witnesses some of the persons who actually assisted or were present at the survey including Jean Verret. Other old residents from that locality were likewise tendered as witnesses. The testimony thus adduced establishes the fact that Foulkes began his survey from an established government point on Bayou Du Large, surveyed down what is known as Marmande's Point, over to Lake Decade, thence to the Mauvais Bois, and from there continuing down to the south shore of Lake Penchant where he made the survey of the island from the edge of the lake.

■ It further appears from the testimony that Jean Verret wanted to buy the Island for the raising of oranges and vegetables and that he had planted some trees thereon

prior to filing his application; that the Island was the only land in this section 3 which was susceptible of settlement and cultivation and the only land that could have legally been .entered at the price of 12½ cents an acre. That Jean Verret went to Eddie Foulkes, who was the surveyor of Terrebonne parish to obtain the island and the ,title thereto; that he accompanied Foulkes to the clerk of court and signed the application and paid him $5 as the price of 40 acres. Foulkes came back later to make the survey which required official authorization and appointed the chain bearers. Upon reaching the shore of Lake Penchant, the island was pointed out to Foulkes by Jean Verret as what was to be surveyed, and as what he wanted, and, according to the testimony, Foulkes so understood and he actually made the survey of the island and Jean Verret paid him $88 for his services. The application, intrusted to Foulkes with the word "Island" written on the margin, was filed in the land office and the money which Jean Verret gave Foulkes to pay for the land was paid into the state treasurer's office and the receipt for that amount and the application are in evidence. These circumstances and others all tend to show the intent to file the Eddie Foulkes survey, and, as the law conclusively presumes that a survey was filed and likewise presumes that the register, an official, did his duty by causing a survey to be made of these unsurveyed lands, and since it is not pretended that any one save Foulkes was delegated by the register, there seems no escape from the conclusion that Eddie Foulkes filed in the land office the survey that he had made in order to obtain the patent for Jean Verret.

■ Where as here the proof is clear that the survey existed in proper form and is now no longer' to be found, proof of its contents and filing may be made by parol and by proof of circumstances. Such is the character of the defendant's parol testimony. It simply goes to re-establish the survey and to identify the land surveyed.

■ If I am correct in my appreciation of the rules of evidence, then there is little that remains to be said, and all of the other issues pass out of the case. For the defendant having shown by competent and uncontradicted testimony that the patent to Jean Verret was based on the state's survey by Eddie Foulkes and having identified Billiot's Island as what was surveyed by him for the purpose of the patent as the south-west quarter of the northeast quarter of section 3 of said township, I take it that the survey, whether right or wrong, must be conclusively accepted as correct and binding on the state and all persons subsequently acquiring rights therefrom. Cragin v. Powell, 128 U.S. 691, 9 S.Ct. 203, 32 L.Ed. 566; Galt v. Willingham (C.C.A.) 11 F.(2d) 757; Brott v. N. O. Land Co., 151 La. 134, 91 So. 653. Consequently, any attempt to extend the Rightor and McCollam survey ,which did not survey this land, cannot be permitted to identify the land surveyed under the state survey and patent, especially where as here both sides concede that the Rightor and McCollam survey and the extension conflicts with the state survey.

A decree may accordingly be entered dismissing the suit of plaintiff and recognizing the defendant as the owner of the island under the patent.

If it is not believed that this opinion is a sufficient compliance with Rule 70½ of the Equity Rules (28 U.S.C.A. following section 723), findings of fact and conclusions of law may be submitted; otherwise, this opinion will stand as the findings of fact and conclusions of law in this case, and be deemed to constitute the formal decision thereof.