**HARRISON v. GRANDISON CO.**
Civil Action No. 292.

District Court, E. D. Louisiana,
New Orleans Division.
Aug. 2, 1943.

See, also, 34 F.Supp. 356.

J. W. Hopkins, of New Orleans, La., for plaintiff.

W. A. Wenck and Henry & Kelleher, all of New Orleans, La., for defendant.

CAILLOUET, District Judge.

This action, filed in a State court by plaintiff Harrison, citizen and resident of Louisiana, against the defendant, citizen-corporation of Delaware, was thereupon removed to this Federal court in due course, and was tried without a jury.

The plaintiff, alleging himself to be the true and lawful owner of a body of marsh lands situated in the Parish of Lafourche, Louisiana, of which he was in the actual physical possession, claimed that the defendant, Grandison Company, was slandering his title to said lands by asserting ownership to the oil, gas and mineral rights therein and thereunder, and that such slander of title had caused him damage and injury in the sum of $3,000.

The plaintiff's petition alleged that the marsh lands referred to were first acquired by the plaintiff from Leonard A. Andrus and Frank W. Grant, by properly executed and recorded deed, on August 28, 1929, with special reservation to the vendors therein made, however, of all oil, gas and mineral rights in and to said lands; that such reserved rights were thereupon transferred by Andrus and Grant to the Grandison Company, defendant, on July 22, 1930; that on October 22, 1929, plaintiff Harrison sold a portion of said lands, less and without the so-reserved oil, gas and mineral rights once appertaining thereto, to one Nelson Constant, or approximately 425 acres; that on March 12, 1934, plaintiff then transferred the remainder of his Andrus-Grant acquisition of August 28, 1929, to Crescent Commercial Company, Inc., of which plaintiff was President and main stockholder; that he and his two sons, Walter J. Harrison and William H. Harrison, acquired said remaining lands, less and without the reserved oil, gas and mineral rights, from said named corporation; that, on December 31, 1936, said two sons then transferred to plaintiff their joint undivided two-thirds interest into said remaining lands, less and without the reserved oil, gas and mineral rights; that since the last named date, plaintiff Harrison had, himself, been in the sole actual and physical possession of all of the lands orginally purchased by him from Andrus and Grant on August 28, 1929, less the part thereof by him sold to Constant on October 22, 1929, as aforesaid, except that, on March 22, 1939, he then sold off about 373 acres to Leroy Shultz and Marguerite Brady, his wife.

Plaintiff further alleged that the oil, gas and mineral rights which Andrus and Grant so reserved to themselves, on August 28, 1929, from their sale to him of their aforementioned marsh lands, and which they subsequently sold to the Grandison Company on July 22, 1930, were lost by non-user for ten years, did revert to him on August 28, 1939, and that defendant, Grandison Company, no longer had any right or interest in and to the oil, gas and minerals in and under the lands then in plaintiff's possession, as owner.

The petition's prayer was to the effect that the defendant Grandison Company be ordered to either disclaim title or assert

such rights as it claimed to have in, to or against the unsold lands in plaintiff's possession or the oil, gas and mineral rights appertaining thereto; and that, after due proceedings had, judgment be rendered in plaintiff's favor ordering the cancellation of the inscription appearing in the La-fourche Parish records of both the Andrus-Grant reservation and the subsequent sale to defendant Grandison Company of the reserved oil, gas and mineral rights.

The defendant promptly answered the petition in this Court and plaintiff, on the same day, moved to remand to the State court on the ground that the matter in con-troversey did not exceed, exclusive of in-terest and costs, the sum or value of $3,000, although defendant's answer alleged that the "oil, gas and mineral rights" involved were worth far more than the sum of $5,000.

The motion to remand was denied for the written reasons appearing in the record.

In its answer, Grandison Company denied the charged slander of title and, assuming the position of plaintiff in a petitory action averred that it was, in fact and in law, the owner of the oil, gas and mineral rights in and under plaintiff's lands; that on June 6, 1935, it granted to Gulf Refining Company of Louisiana a certain oil, gas and mineral lease covering and affecting all of said rights; that said company did enter upon plaintiff's lands on or about March 18, 1939, for the purpose of initiating and conducting drilling operations under and by authority of said mineral lease of June 6, 1935, and did drill a well in the northeast corner of Section 14, T. 20 S., R. 23 E., in a diligent and bona fide effort to discover oil, gas or other minerals; that such well was drilled down to 12,013 feet, a depth level where, it could reasonably be expected, oil, gas and other minerals should be produced in paying quantities, but the hope of production not being realized, abandonment of such well followed on June 16, 1939; that a second well was thereupon drilled in Section 21, of the same township and range, by defend-ant company's said named lessee down to a depth of 12,200 feet in a second diligent and bona fide effort to discover oil, gas or other minerals in paying quantities, but, again without success; that the drilling of such second well began on or about August 23, 1939, and continued until abandonment on December 17, 1939; that such two diligent and bona fide efforts to discover and develop

the minerals on, in and under plaintiff's lands, in fact and in law operated an inter-ruption of the 10-year prescriptive period provided for by Articles 789 and 3546 of the Revised Civil Code of Louisiana against nonusage of a servitude such as was en-joyed under the Andrus-Grant reservation of the oil, gas and other mineral rights once appertaining to the lands acquired by plain-tiff Harrison, as aforesaid; that such min-eral rights have not reverted to the land-owner, never having been lost to defendant Grandison Company by reason of nonusage for ten years, and were still its property; and, accordingly, defendant prayed for judgment recognizing it as owner of the oil, gas and other mineral rights which were reserved by Andrus and Grant from their sale to plaintiff Harrison on August 28, 1929, and were thereupon transferred to de-fendant on July 22, 1930.

As the outcome of a pre-trial conference it was stipulated, among other things, that the lands referred to were all granted by the United States to the State of Louisiana under the Swamp Land Act of 1849, and were patented by the State in 1901, to plain-tiff's predecessors in title as sea marsh or prairie lands; that it was the Gulf Re-fining Company of Delaware, as the as-signee of Gulf Refining Company of Louisi-ana, that drilled the two wells hereinabove mentioned and which were known as Grand-ison No. 1 and Grandison No. 2, respec-tively; that each of such wells was drilled in a diligent and bona fide effort to bring in production, down to a depth which, con-sidering the well's location, was the depth where one could reasonably expect that oil, gas and other minerals would be produced in paying quantities; that entry on location for the drilling of Grandison No. 2 was effected on or about August 25, 1939, after abandonment, at 12,013 feet, of Grandison No. 1 on June 6, 1939, and said second well was actually drilled down to a depth of approximately 91 feet on said August 25th; that on the 28th, a 90-foot string of con-ductor pipe was installed and there then followed a delay until August 31st in order to allow the cement to set, when, on said date, drilling was resumed and was there-after diligently and uninterruptedly prose-cuted down to a depth of 12,200 feet, but, again, without success; which caused the abandonment of said second well on De-cember 17, 1939.

During the course of the trial it was ad-mitted by defendant Grandison Company

that not all of the Harrison lands are contiguous; and that, as to such tracts as defendant specifically admitted to be non-contiguous to the well-sites, the drilling of Grandison No. 1 and Grandison No. 2, respectively, did not interrupt the running of the 10-year prescription for nonuser. A stipulation setting out exactly what landed area is claimed by defendant to be still affected by the Andrus-Grant mineral rights reservation of August 28, 1929, was subsequently filed in the record, in accordance with the Court's order to that effect, and the lands involved are made to appear upon a map or sketch forming part of such stipulation.

It is well to note here, however:

First: That defendant Grandison Company conceded that there has been no interruption of prescription with respect to its servitude, insofar as the same related to that separate and distinct tract of 520 acres, more or less, in Sections 5, 6, 7 and 8, in T. 19 S., R. 23 E., and stipulates that the island in Lake Enfermer (Renfermé), which is delineated in red on the aforementioned map or sketch, has been released from the effect of the claimed mineral servitude.

Second: That plaintiff Harrison contended that such interruption of prescription as resulted from the drilling of Grandison No. 1 in the N.E. ¼ of Section 14, T. 20 S., R. 23 E., did not affect any more than such surrounding area as is enclosed between the alleged "formerly navigable" Bayou L'Ours and "now navigable" waters in the Harrison marsh or prairie lands.

Third: That plaintiff also contended that, as to Grandison No. 2 the drilling operations were commenced too late, and that, since so little had been accomplished at the expiration of the 10-year period, no interruption of prescription took place; but, if found otherwise, then plaintiff admitted that "the acreage still subject to the mineral reservation around this second well would be that which defendant stipulated at the trial".

Fourth: That Section 21, T. 20 S., R. 23 E., upon which was drilled Grandison No. 2, is entirely separated and distinct from the land area adjoining the Grandison No. 1 well-site in Section 14, said township and range.

█ The drilling of Grandison No. 1, commencing March 18, 1939, and ending with abandonment of the well as a dry hole on June 16, 1939, at the depth of 12,013 feet, at which there had been some reasonable hope of discovering minerals in paying quantities, was sufficient to interrupt the running of the ten-year prescription liberandi causa against a mineral servitude, as the right to the continued use of such servitude is not dependent on the successful outcome of the drilling operations. Rev. Civ.Code (La.) Arts. 789, 3546; Lynn v. Harrington et al., 1939, 193 La. 877, 192 So. 517; Hunter Co. Inc., v. Ulrich, 1942, 200 La. 536, 8 So.2d 531.

█ Such interruption applied to the whole of the contiguous area within the boundaries of which such drilling operations took place, and the ten-year nonusage period (which it is absolutely necessary to have as legal foundation for the ten-year prescription by which the land may be relieved from the reserved mineral servitude) was never completed; such part of said ten-year nonusage period as had been building up until occurred the good faith drilling operation, then collapsed into the oblivion of legal nothingness and the ten-year prescriptive term began to run anew from the abandonment of the well on June 16, 1939. The servitude "was capable of being kept in force and effect by use of any part of it, so long as not more than ten years elapsed between one use and another", as said the Supreme Court of Louisiana in Levy v. Crawford, Jenkins & Booth, Ltd., et al, 1940, 194 La. 757, 194 So. 772, 773. See also: Ohio Oil Co. v. Cox et al, 1940, 196 La. 193, 198 So. 902.

It appears from defendant's pleadings and the parties' stipulation, embodying the therein referred-to sketch prepared by John C. DeArmas, Jr., C.E., in January, 1942, that defendant Grandison Company claims that, by reason of its title and the aforementioned Grandison No. 1 drilling operations thereunder, the entire hatched area on said DeArmas sketch, within T. 19 S., R. 23 E., and the north half (N½) of T. 20 S., R. 23 E., except the island in Lake Enfermer (or Renfermé) delineated in red, is still subject to the reserved mineral servitude of August 28, 1929. Plaintiff Harrison, on the other hand, sought to materially restrict the present servitude coverage, contending that within the limits of said hatched area are beds of navigable streams which (so he averred) are the property of the State of Louisiana, with the necessary result that then there is absent that continuity and con-

tiguousness of area which would have otherwise made the reservation of the oil, gas and mineral rights (in its application to said particular area) the retention of only one servitude—as the defendant claims actually took place.

The issue is whether the aforementioned Grandison No. 1 drilling operations interrupted the ten-year prescription as to all, or only a part, of said sketch-delineated area within T. 19 S., R. 23 E., and the north half (N½) of T. 20 S., R. 23 E.

█ There is no contention that interruption thereby resulted as to the hatched are within the south half (S½) of T. 20 S., R. 23 E., because it is recognized, of course, that where as here, there are two or more distinct and separate mineral servitudes at issue, development of each affected tract is necessary in order to prevent completion of the ten-year nonusage period with respect to each and the accrual of the resultant release and discharge from the servitude coverage; development of the one tract, no matter how extensive, will not interrupt the running of prescription as to any other one, or more, servitudes granted or reserved by the same instrument; although interruption of prescription by the Grandison No. 2 drilling operations is claimed. Frost Lumber Industries, Inc., v. Union Power Co. Inc., 1935, 182 La. 439, 162 So. 37; Cox v. Acme Land & Investment Co. Inc.,'1939, 192 La. 688, 188 So. 742; Hunter Co. Inc., v. Ulrich, 1942, supra.

The plaintiff having admitted that the Grandison No. 1 drilling operations did interrupt the ten-year prescription for nonusage, there remains to consider to what extent the Harrison lands are still affected by the reserved mineral servitude.

Firstly, it must be noted that both of the aforementioned two hatched land areas reflected on the DeArmas sketch comprise nothing but what were swamp and overflowed lands which (the parties stipulated) the United States granted to the State of Louisiana under the Swamp Land Act of 1849, 9 Stat. 352, and which said State patented to plaintiff's predecessors in title, in 1901, as sea marsh or prairie lands, under (La.) Act No. 75 of 1880. Dart's Statutes, § 7185. Both areas were regularly surveyed by William J. Henry, Deputy Surveyor, under contract of September 26, 1871, with the Surveyor-General of the United States (La.); and the sworn official field notes of the survey report the territory in question as open marshy prairie, all subject to tidal overflow except two ridges along Bayou John the Fool and Bayou L'Ours.

Plaintiff's attempted restriction of the servitude coverage to a lesser area than the composite hatched area delineated on the DeArmas sketch as comprising lands in Sections 3, 4, 9, 10, 11, 12, 13, 14, 15, 21, 22, 23, 24, 25, 26, 27, 28, 33, 34, 35, 36, Township 19 South, Range 23 East, and in Sections 1, 2, 3, 4, 9, 10, 11, 12, 13, 14, 15, Township 20 South, Range 23 East, was mainly based upon the contention that, if navigability of Bayou L'Ours in 1812 at the time of Louisiana's admission into the Union be established, then the State still owns the bayou bed, inasmuch as (so ran the plaintiff's claim) the Louisiana Act No. 75 of 1880, under the asserted authority of which patents issued, in 1901, to the common author in title of both the Harrison lands and the Grandison Company's mineral · servitude thereon, specifically provided for the disposal of nothing but "the public lands donated by congress to the state of Louisiana, designated as sea marsh, or prairie, and subject to tidal overflow, so as to render them unfit for actual residence, settlement and cultivation * * *"; it being argued that title to the alleged State-owned bayou bed vested in Louisiana as sovereign State, upon its admission into the Union in 1812, and not by virtue of the Swamp Land Grant of 1849; and that, therefore, the lands patented did not include such bayou bed, with the effect that the continuity of the Harrison landed area is broken and defendant's claim of a still-existent mineral servitude cannot be justified with respect to such area as is separated and disconnected by said (alleged) State-owned bayou bed from the Grandison No. 1 well-site.

It is admitted that Bayou L'Ours, if it actually was a navigable stream in 1812, is no longer such.

It is also argued on behalf of plaintiff that other named bodies of water are navigable at the present time and separate and disconnect portions of the aforementioned composite hatched area from the Grandison No. 1 well-site area; or, in the alternative, if such water bodies are not now navigable, then their bottoms or beds as well as the bottom or bed of Bayou L'Ours—whether such bodies and such bayou were navigable or not in 1901, (when the State patents to the Harrison lands issued)—continue to be the property of the State and divide said

Harrison lands into disconnected parcels, inasmuch as, it is claimed, such beds were specifically reserved from disposal by the State, under the following provisions of Act 121 of 1896, or the Louisiana Oyster Law, viz.: "* * * all beds of the rivers, bayous, creeks, lakes, coves and inlets bordering on the Gulf of Mexico * * * shall continue and remain the property of the State * * * and no grant or sale or conveyance shall hereafter be made by the Register * * * to any estate, or interests of the State, in any natural oyster bed or shoal, whether the said bed or shoal shall ebb bear [bare] or not; * * *."

■ But the 1901 patents purport to describe, in accordance with the Henry official plats of survey deposited in the State Land office, the lands intended to be thereby disposed of by the State; the survey acreages are the identical acreages called for by the patent description and, under the jurisprudence and statutes of Louisiana governing the entry and sale of swamp and marsh lands, all the recitals of the patents are to be considered in determining the measure or quantity of land conveyed, as was held by the Louisiana Supreme Court in White v. Leovy et al., 49 La.Ann. 1660, 22 So. 931, in 1897, or four years before title so emanated from the State. And it is noteworthy that neither by field notes nor plat of survey does it appear that any submerged area, such as claimed by plaintiff and just referred to hereinabove, was a navigable body of water when the Henry official survey was effected before the enactment of Act 75 of 1880, under authority of which the 1901 patents issued, although the surveyor did make allowance and did deduct for the acreage covered by other waters by him found to be navigable, in the same township.

■ The patents in question, which are regular in all respects, must be presumed to have been validly issued for the acreage therein recited, and they have incorporated therein the official map or plat of survey relating to the lands patented. 22 R.C.L. p. 283; White v. Leovy et al., supra; Burton Swartz Cypress Co. v. Baker-Wakefield Cypress Co. Ltd., 1927, 163 La. 992, 113 So. 219; La Terre Co. Inc. v. Billiot's Shell Island, Inc., 5 Cir., 1939, 103 F.2d 53.

■ No more land was conveyed by the State to plaintiff's authors in title than was authorized by the Henry survey, but,

if otherwise, then right to complain at no time existed in any but the State; plaintiff having no title antedating that of defendant, was never in position to do so. Safford et al. v. Albritton et al., 1926, 161 La. 773, 109 So. 486.

■ If, as held, by the Louisiana Supreme Court in Acadia-Vermillion Rice Irrigating Company, Inc. v. Miller, 1933, 178 La. 954, 152 So. 576, 578, the error of describing land by estimation of quantity in a patent, issued under Act 75 of 1880 (the underlying authority for the patents here), is "prescriptible in six years" (Act 62 of 1912), then a fortiori is it too late to attempt, directly or indirectly, the alteration of the acreage covered by the 1901 patents issued under Act 75 of 1880, even though it be conceded (but merely for the purpose of the present observation) that any right ever lay in plaintiff to question the acreage of the Harrison lands to the detriment of the owner of the servitude which affected the lands described, both as to limits and acreage, in conformity with the basic patent description; from which patents of 1901 descended to plaintiff the land area so described, less and excepting oil, gas and mineral rights relating thereto, and to defendant descended the reserved mineral servitude, the present coverage of which is now at issue between the parties. Pecot v. Prevost et al., 1906, 117 La. 765, 42 So. 263; Consolidated-Progressive Oil Corporation et al. v. Standard Oil Co. of Louisiana, 1925, 158 La. 982, 105 So. 36.

■ Aside from the foregoing considerations, plaintiff's contention that the presence of Act 121 of 1896 (Louisiana Oyster Law) prevented the legal patenting, as part of the Harrison lands, of any beds of "rivers, bayous, creeks, lakes, coves and inlets bordering on the Gulf of Mexico" is clearly untenable, because no such beds are comprised within and under the description of the Harrison lands subjected to the mineral servitude; no bed of any body of water within Townships 19 and 20 South, Range 23 East, can reasonably be described as "bordering" on the Gulf of Mexico, or that is to say, as touching the edge of the gulf, as contiguous or adjacent to it, as abutting or adjoining the same. The statute was enacted specifically "to encourage, protect, regulate and develop the oyster industry in the State of Louisiana; (and) to define the rights of riparian proprietors in oyster-beds and fisheries on

their water fronts, etc.", and the record is bare of even the faintest suggestion that any part of the area of the two above-mentioned townships was ever fit for or devoted to oyster culture.

Passing over the fact that plaintiff did not so plead, it may, however, be said that, as appears from his counsel's briefs, it is contended:

1. That Bayou L'Ours was "navigable in 1812 and for a considerable time afterwards across plaintiff's lands", although not so at the present time. (Presumably neither was Bayou L'Ours navigable at the time of the enactment of Act 75 of 1880, nor when, under the Swamp Land Grant, Townships 19 and 20 S., R. 23 E., were donated to the State of Louisiana by the United States.)

2. Bayou Poisson Rouge, small lake, and connection from said small lake to Bayou L'Ours, in the N.E.¼ of Section 4, T. 20 S., R. 23 E., "are navigable."

3. But, in the alternative, should the Court decree Bayou L'Ours not to have been navigable, as claimed, and the three other named water bodies not to now be navigable, "then the State owns the bottoms thereof under Act 121 of 1896".

4. Only if the bed of Bayou L'Ours be decreed not to belong to the State, then "the bayou in Sections 11 and 14, T. 19 S., R. 23 E., running southerly from Coffee Bayou is navigable"; or, alternatively, "the State has reserved the ownership of the bottom of the bayou * * * by virtue of Act 121 of 1896".

■ All of the plaintiff's evidence relating to the question of navigability vel non, just adverted to, found its way into the record over and subject to defendant's objection; but even if fullest possible benefit therefrom be made available to support plaintiff's contentions, due consideration and weighing of all the evidence, oral and documentary, and ordinary and expert testimony, leads to the definite conclusion that none of plaintiff's contentions is established by the preponderance of evidence, but that, on the contrary, defendant has satisfactorily proved, by the presumptively valid and conclusive patent coverage demonstrated, the complete absence (from the hatched area relating to the Grandison No. 1 drilling operations) of any separating State-owned water beds and the existence of the claimed continuity and contiguity of the Harrison lands (bearing from the Grandison No. 1 well-site) necessary to prevent the consummation of the ten-year nonuser prescription as to any part of the hatched area on the DeArmas sketch, except the admittedly segregated tract in T. 20 S., R. 23 E. (composed, in greater part, of portions of Sections 21 and 28) whereon was drilled the Grandison No. 2 well.

■ There is no dispute between the parties as to the extent of the land area affected by said second and separate reserved mineral servitude, if it be actually determined that defendant has successfully borne the burden of proving that it, or some one acting in its name, "has made use" of the same, in the manner contemplated by the reservation, within ten years next immediately following the time that the mineral rights appertaining to said land area were withheld and excepted by Andrus and Grant in and from their sale of the Harrison lands on August 28, 1929.

The so-reserved mineral rights were transferred by the owners on July 22, 1930, to defendant Grandison Company, which, on June 6, 1935, granted an oil, gas and mineral lease with respect thereto to the Gulf Refining Company of Louisiana, and lessee's assignee, Gulf Refining Company of Delaware, in 1939, did operate under said lease, and did enter, on or about August 25, 1939, upon the S½ of Section 21, Township 20 South, Range 23 East, and forthwith began the drilling of Grandison No. 2, within the 10 years from August 28, 1929, when had been reserved from the sale of the Harrison lands all such oil, gas and other minerals as appertained thereto; and did prosecute said drilling operations down to the depth of 12,200 feet (being the depth at which it could reasonably be expected that production in paying quantities might be secured) in a diligent and uninterrupted effort to discover and develop oil, gas or other minerals, which effort persisted from the commencement of the exercise of the mineral servitude (before the expiration of ten years from August 28, 1929,) on said August 25, 1939, up to December 17, 1939, when said Grandison No. 2 was abandoned as a dry hole.

It is, however, contended by counsel that, as was held in Louisiana Petroleum Company v. Broussard, 1931, 172 La. 613, 135 So. 1, the use of a servitude which interrupts the nonusage prescription of 10 years prescribed by Arts. 789 and 3546 (La.) R.C.C., must be that character of use as was in contemplation of the parties to the

servitude grant or reservation; and contends that since the commencement (within the ten years) of the Grandison No. 2 drilling operations was belated and it was then physically impossible to drill the well down to the horizon where one might reasonably expect production in paying quantities, the mineral servitude, or the right reserved to exploit for and take oil, gas and other minerals on and from the Harrison land, has been lost by nonusage for ten years.

■ The position is untenable. So long as a "good faith" use of the reserved mineral servitude is made within ten years, the land to which it is attached is not released therefrom by the prescription of 10 years for nonuser. Keebler v. Seubert, 1929, 167 La. 901, 120 So. 591; Castille et al v. Texas Co. et al. 1930, 170 La. 887, 129 So. 518; Hunter Co., Inc. v. Ulrich, 1942, 200 La. 536, 8 So.2d 531.

The drilling of Grandison No. 2 for over three months, necessarily at considerable cost and expense, does not permit one to reasonably doubt the entire good faith of the operation; and, in effect, such good faith is stipulated by the parties.

The Court's formal findings of fact and conclusions of law are as follows, viz.:

### Findings of Fact.

1. There was reserved on August 28, 1929, by Leonard A. Andrus and Frank W. Grant, in and from their sale and transfer of the Harrison lands all oil, gas and mineral rights in and to said lands.

2. But such reservation, because of lack of contiguity of the several parcels comprising said Harrison lands, operated as the reservation of several mineral servitudes.

3. The continued existence and the respective land coverage of only two are at issue herein.

4. It is satisfactorily established that all parcels of land comprised in the larger and upper one of the two hatched areas appearing on the map or sketch of John C. DeArmas, Jr., C.E., dated January 1942 (which is attached to and made to form part of the parties' stipulation filed in the record hereof on January 31, 1942), are contiguous and form an unbroken and continuous body of land, within the lower portion of which Grandison Well No. 1 was drilled; and it is likewise satisfactorily established that there was a bona fide exercise of the mineral servitude affecting said tract of land, within the ten years from August 28, 1929, when said servitude was reserved by Leonard A. Andrus and Frank W. Grant from their sale and transfer of the Harrison lands.

5. It is satisfactorily established that all acreage comprised in the smaller and lower one of the two hatched areas so appearing on the said DeArmas map or sketch is contiguous; and it is likewise satisfactorily established that a bona fide exercise and use was made within 10 years from the date of its reservation, of the mineral servitude affecting said contiguous area, in the manner contemplated by the reservation.

6. The original plaintiff Joseph De Fuentes Harrison having died since the trial and the submission of the cause, his surviving widow in community, Mrs. Marie Levis Harrison, and his children and sole heirs, Mrs. Lydia Harrison, divorced wife of Charles G. Knight, Walter J. Harrison, and William H. Harrison, have been duly substituted as parties plaintiff, as appears from the Court's order herein.

### Conclusions of Law.

1. The original defendant Grandison Company, in its assumed position of plaintiff in petitory action, has proved by the preponderance of evidence that the remaining two mineral servitudes to which it still lays claim have not been lost by the ten-year prescription for nonuser.

2. As such plaintiff in petitory action, said Grandison Company is entitled to judgment recognizing its continued ownership of all mineral rights relating to and affecting the Harrison lands, to the extent now claimed by said Grandison Company and constituting the two mineral servitudes which, respectively, cover the two hatched areas reflected on the map or sketch of survey of Jno. C. DeArmas, Jr., C.E., dated January 1942, and filed with and forming part of the parties' stipulation of January 31, 1942, in the record herein; with costs.

Let judgment in favor of said Grandison Company, plaintiff in petitory action, be accordingly entered forthwith.